UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

AWB GENEVA S.A,                                          :

               Plaintiff,                :

    - against -                                       :

GLENCORE GRAIN B.V.,                                    :

               Defendant.                :
------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, AWB GENEVA S.A. (hereafter referred to as "Plaintiff"), by and through its

attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, GLENCORE GRAIN B.V. ("Defendant"), alleges, upon information and belief, as

follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This matter also arises

under the Court's federal question jurisdiction within the meaning of 28 United States §1331

and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity, organized under, and existing by virtue of the laws of Switzerland.

3.     At all material times to this action, Plaintiff was the charterer of the "B

OCEANIA" (hereinafter the "Vessel").

4.      Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was the disponent owner of the Vessel.

5.      Pursuant to a charter party dated April 4, 2008 (hereinafter the "charter party"), Plaintiff chartered the Vessel from Defendant for a time charter trip for the carriage of approximately 60,000 metric tons of Australian wheat in bulk (hereinafter the "cargo") from one or two safe ports, Australia to one safe berth, one safe port, Adabiya, Red Sea Egypt. *A copy of the charter party is attached hereto as Exhibit 1.*

6.      The Vessel arrived at Esperance, Australia on April 16, 2008 for the purpose of loading the cargo. However, on April 23, 2008 the Australian Maritime Safety Authority detained the Vessel finding her unseaworthy due to various structural defects including cracked side shell steel plating in the way of cargo holds 6 and 7. *A copy of the detention notice is attached hereto as Exhibit 2.*

7.      The Vessel's detention was due to Defendant's breach of its obligations to deliver to Plaintiff a seaworthy vessel, tight, staunch and strong and in every way fitted for service, in a thoroughly efficient state of hull, machinery and equipment, in accordance with the Charter Party. *See lines 41-43, 67-69 and clauses 15 and 61 of Exhibit 1.*

8.      Vessel repairs were required due to the structural deficiencies noted by the Australian Maritime Safety Authority. Because of the excessive delay caused by the vessel repairs the Plaintiff notified Defendant on or about May 19, 2008 that they held the Defendant in repudiatory breach of the Charter Party and therefore treated the Charter Party as terminated.

8.      Prior to the Vessel's detention the Plaintiff paid to Defendant advanced hire for the Vessel and also paid for bunkers (i.e., fuel oil) on board the Vessel at the time of delivery,

2

which it seeks to recover (less fuel oil consumed by the Vessel), due to Defendant's breach of charter party as described above. The Plaintiff seeks recovery of $2,275,335.00 in overpaid hire and bunkers. *A copy of Plaintiff's claim summary is attached hereto as Exhibit 3*

10.     Plaintiff also seeks recovery from Defendant the costs of wasted port costs which were incurred at Esperance prior to the Vessel being detained by port authorities. Plaintiff incurred $32,715.62 in wasted port hire costs as reflected by the Plaintiff's claim summary (Exhibit 3) and the invoice of its port agent Sea Corporation Pty Ltd. *A copy of the Sea Corporation Pty Ltd invoice is attached hereto as Exhibit 4.*

11.     In reliance upon the Charter Party, the Plaintiff re-let the Vessel to AWB (Australia) Ltd., which in turn re-let the vessel to AWB (International) Ltd. which in turn had a contract with Five Star Flour Mills Co. for the sale and purchase of the cargo.

12.     To date Plaintiff has been presented with formal claims in the sum of $58,842.69 by AWB (Australia) Ltd. for the reimbursement of expenses incurred for non-party cargo receiver surveyors to attend at Esperance and survey the cargo to ensure it was still fit despite the delayed delivery and also for the storage charges of the cargo due to the failed lifting with Defendant. *A copy of the AWB (Australia) Ltd. invoices and supports are attached hereto as Exhibit 5.*

13.     Plaintiff expects to be presented with further formal claims by AWB (International) Ltd. and/or AWB (Australia) Ltd. pursuant to the chain of charter parties. Plaintiff specifically reserves its right herein to seek security from Defendant for such indemnity claims upon the occurrence of any of the following events: (a) it is formally presented with such claims; (b) it is subject to a lawsuit, arbitration or other formal recovery mechanism for payment

of such claims, (c) it is adjudged or otherwise deemed liable for such claims, (b) it settles or resolves such claims; or (d) it secures such claims.

14.     As a result of Defendant's breach of the charter party as aforesaid, Plaintiff has incurred damages in the approximate amount of $2,366,893.22, exclusive of interest, arbitration costs and attorneys fees.

15.     In accordance with the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply.

16.     Despite due demand, Defendant has failed to pay the amounts due and owing to Plaintiff. Defendant has recently made a partial payment of $418,060.58 which it claims is in full and final satisfaction of the amounts due and owing to Plaintiff. Plaintiff rejects that this partial payment is in full and final satisfaction and seeks to recover the full amount due and owing from Defendant.

17.     Plaintiff will initiate arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

18.     This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

19.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

A.     Principal claim of $2,366,893.32                    $1,948,832.74;
        *Less partial payment of $418,060.58*

4

| B. | Estimated interest on claim 3 years at 7.0% compounded quarterly: | $ 451,036.51; |
|----|----|----|
| C. | Estimated arbitration costs: | $    75,000.00; and |
| D. | Estimated attorneys' fees and expenses: | $ 250,000.00. |
| **Total:** | | **$2,724,869.25.** |

20.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit of Kevin J. Lennon annexed hereto as Exhibit 6.*

21.     The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

     **WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims,

attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$2,724,869.25** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.     That in the alternative, this Court enter Judgment against the Defendant on the claims set forth herein;

G.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

H.     That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

6

Dated:        August 12, 2008
              New York, NY

> The Plaintiff,
> AWB (GENEVA) S.A.
>
> By: _Anne C. LeVasseur_
> Kevih J. Lennon
> Anne C. LeVasseur
>
> LENNON, MURPHY & LENNON, LLC
> 420 Lexington Avenue, Suite 300
> New York, NY 10170
> (212) 490-6050 - phone
> (212) 490-6070 – facsimile
> kjl@lenmur.com
> acl@lenmur.com

7

## ATTORNEY'S VERIFICATION

State of New York    )
                     )         ss.:    City of New York
County of New York   )

1. My name is Anne C. LeVasseur.

2. I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3. I am an associate in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5. The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6. The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    August 12, 2008
          New York, NY

                              _Anne C. LeVasseur_
                              Anne C. LeVasseur

8

# EXHIBIT 1

**Kevin J. Lennon**

**From:** Anne-Marie Castle [acastle@else.co.uk]

**Sent:** Wednesday, April 30, 2008 7:09 AM

**To:** Andrew Hughes

**Subject:** FW: Fw: R: b. oceania

Here below the recap between us and owners.

Thanks/Best regards
Maria Calà
AWB (GENEVA) S.A.

Tel. direct : +41 22 592 95 24
Mobile    : +41 78 862 85 61
Fax       : +41 22 592 95 00/66
E-mail    : operations@awbchartering.com

panamax@nolarmadry.lt                              To  TradingGenevaAWBChartering

                                                   CC  OperationsGenevaAWBChartering
04/04/2008 16:50
                                                   Subject Fw: R: b. oceania

RIF: 01242184   04/04/2008   16.49.02

NOLARMA GENOA 04.04.08

MICHEL/UGO
--

RE MV B OCEANIA/AWB - CP 04.04.08
==

FOLL NEGOS IN ACCORDANCE WITH YR AUTHORITY WE ARE PLSD TO
CONFIRM FOLL CLEAN FIXTURE RECAP:

FIXTURE TO BE KEPT ABS P&C
=========================

- chrts subs in order

b. oceania (on t/c to messrs glencore rotterdam)
a) built - 1990
b) flag - maltese
c) dwat - 70,424
d) draft (ssw) - 13.218 m
e) grt/nrt - 38,337 / 23,174

suez grt/nrt - 38,841.59 / 34,891.11
panama grt/nrt - 39,073.18 / 32,360.01
f) loa/beam - 229.98 / 32.20 m
g) grain in main holds - 82,944.1 cbm - 2,929,170.9 cbft grain
h) bale - 78,796.9 cbm / 2,782,712.3 cu ft
i) holds/hatches - 7/7
j) hatch sizes - n. 1: 14.94 x 11 - no. 2 - no. 7: 14.94 m x 15 m
k) gear - 4 cranes and 4 grabs
l) type of hatchcovers (which to be in good working condition) -
kvarner, side rolling
m) tpi/tpc summer marks  -
dwt/tpc at 12,0 m sw  61,100 mts  67,75
12,1 m sw  61,400 mts  67,80
12,5 m sw  65,250 mts  68,20
n) bunker capacities - ifo 2474 - bss 85 pct cap mdo 211
o) cubic breakdown by hold - cuft grain
bale - 78,796.9 cbm/ 2,782,712.3 cu.ft
holdwise grain - as per above
holdwise bale - 1. 9,978.6/ 352,394.6   2. 11,554.4/ 408,042.8
3. 11,447.6/ 405,332.0   4. 11,432.6/ 403,741.7
5. 11,575.1/ 408,774.1   6. 11,578.0/ 408,878.1
7. 11,200,6/ 395,549.0
distance from railing to hatch covers each side - 8,8 m
distance. from bow to fore of 1st hold opening - 20,4 m
distance. from stern to aft of last hold opening - 44,2 m
p) constants incl fresh water
constants excl fw 460 mts - fw - 329 mts
q) port consumption
3.5 metric tons mdo working 24 hours
1 metric ton mdo only
r) speeds/consumptions - vessel capable of steaming and maintaining
abt 12.75 knots on abt 30.5 mt ifo laden
abt 12.75 knots on abt 29.5 mt ifo ballast
other speeds/consumptions:
fuel specs : ifo 380cst iso 8217:2005 (f-rmg 35)
mdo iso 8217:2005 (f-dmb) alternatively mgo dma
stable and free of lubs/chens/other wastes fuels only +
different sourced fuels not to be mixed in vsls tanks
maneuvers  : n/e consumes mdo whilst engaged in maneuvers,i/o ports/
locks, sailing narrow/shallow/confined waters/canals/
waterways/rivers/estuaries etc
s) water line to top of hatchcoaming in fully ballasted condition - 13.2 m
t) last 3 cargoes/charterers - reverting
u) vessels class - 100 a1
v) h + m value /covered with - 30,000,000
w) last dry dock /special survey - vsl is actually in hk for dry dock
x) vsls contact details (call sign/inmarsat tlx/fax and /email
phone: 00873 761137430-1
fax  : 00873 761137432
telex: 0583 423659611
e mail: boceaniac1@skyfile-c.com

y) vsls i m o  number 8806515

owners warrant :-

- vessel is selftrimming single deck bulkcarrier(and was originally

constructed as a bulkcarrier)
- vessel has clear unobstructed main holds
- vessel is australian hold ladders fitted
- vessel does not have any horizontal frames and/or beams within holds
- vessel does not have a centerline bulkhead/beam or any other
obstructions.
- vessel has no deep tanks or compartments that were originally
constructed as deep tanks
- vessels has no reefer space or special cargo locker space.
- cargo to be loaded in main holds only
- vessel to be steel floored throughout
- if geared charterers to have free use of vessel gear which is to be
kept in full working order for immediate use thoughout the currency
of the c/p and and serves all hatches
- engine/bridge aft
- vessel/crew and office to be itf approved


owners warrant, that during the currency of this charter party:-

- vessel shall not change ownership or class without charterers'
written consent
- vessel's hull and machinery insurance shall be fully maintained and
will not be changed.
- vessel is fully pandi covered, which shall be maintained
- vessel will not be scheduled for break up or sold for scrap upon
completion of this charter. charterers are granted a maritime lien
on the vessel and are entitled to deduct from any sums due to
owners for all damages arising from such breach of this warranty
- vsl is fully fitted for carriage of grains as per solas regulations
without bagging/strappings/securing of cargo.in case full cargo loaded
owise according to ship's stability booklet
- vsl has and will has all latest required, valid and up to date
certificates
on  board valid throughout the charter.
- vsl has not called cis pacific ports in the last 2 years and is
free of asian gypsy moth larvae/eggs
- vsl has not been detained by any port controls in the last
24months. if vessel has been detained please advise where/when and
for what reasons


commercial manager:
--------------------
bulker chartering and management sa
piazza molinom nuovo 17
6900 lugano - svizzera

++

acct awb

- del retro cjk 30/3/2008 21:06 lt (outward sea pilot station of shanghai)

- one tct via west australia to egypt red sea

with grains

- redel closp adabiya

- bod:
1.647 mtons ifo / 98 mtons mdo
same qtties/prices bends
usd 500,-- ifo/ resp. 1000,-- mdo

- hire usd 49.500,--diot

- 3.75 add comm + 1.25 pct 50/50 me/you

- owise mv 'spar corona' cp dd 02.06.06 ustood as far as applicable
logically amended as per main terms agreed and with foll alterations:

-clause 75 ddock only in case of emergency

-clause 85 deleted
end

tks vm for fixture - drawing up cp accly


brgds/Nolarma


This message is intended only for the named recipient and may
contain confidential, proprietary or legally privileged information.
No confidentiality or privilege is waived or lost by any misdirected
transmission. If you received this message in error, please notify
us immediately and immediately delete this message from your system.
If you are not the intended recipient, you must not use, disclose,
distribute or
copy any part of this message.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"NOTICE
This email and any attachments are confidential and are intended only for the use of the
named recipient. They may contain legally privileged information and are subject to
copyright. You must not read, copy, use or disclose them without our prior written
consent. If you have received this email in error please notify us on +61 (0)3 9209 2000 or

by return email and then delete both messages.

We do not warrant that this email or any attachments are error or virus free or that this communication is secure and accept no liability for computer viruses, data corruption, delay, interruption, unauthorised access or unauthorised amendment."

---

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

---



Copyright © 1981 and Published by: The Association of Ship Brokers & Agents (U.S.A.), Inc. (ASBA), New York. This derivative work may not be copied without the permission of the copyright owners.
Code Name: ASBATIME

# TIME CHARTER
### New York Produce Exchange Form

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

|  |  |  |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded in *Hamburg*.............. | 1 |
| | *the 4th* ............................ day of *April* ...................... ~~19~~ *2008* | 2 |
| Owners | between *GLENCORE GRAIN B.V., Rotterdam, as Timechartered* | 3 |
| | .................................................................................. Owners of | 4 |
| Description | the good *Maltese flag* .......... ~~Steamship~~/Motorship M/V *'B OCEANIA' - see cl. 28* | 5 |
| of | ~~of.................................of................... tons gross register, and~~ | 6 |
| Vessel | ~~..................... tons net register, having engines of .................~~ | 7 |
| | ~~horsepower and with hull, machinery and equipment in a throughly efficient~~ | 8 |
| | ~~state, and classed..............................................................of about~~ | 9 |
| | ~~.......................................cubic feet grain/bale capacity ..................~~ | 10 |
| | ~~.................................................................................and about~~ | 11 |
| | ~~......................long/metric tons deadweight capacity (cargo and~~ | 12 |
| | ~~bunkers, including fresh water and stores not exceeding.................~~ | 13 |
| | ~~long/metric tons) on a salt water draft of.............................on summer~~ | 14 |
| | ~~freeboard, inclusive of permanent bunkers, which are of the capacity of about~~ | 15 |
| | ~~..................................................................long/metric tons of~~ | 16 |
| | ~~........................................................fuel oil and.....................~~ | 17 |
| | ~~long/metric tons of.................................................................., and~~ | 18 |
| | ~~capable of steaming, fully laden, under good weather conditions about~~ | 19 |
| | ~~............................knots on a consumption of about.......................~~ | 20 |
| | ~~long/metric tons of...............................................................~~ | 21 |
| | ~~...........................................................................................~~ | 22 |
| | now *trading*.................................................................................... | 23 |
| | ............................................................................................ and | 24 |
| Charterers | *Messrs A.W.B. (Geneva) S.A.*........................................................ | 25 |
| | ..................................... Charterers of the City of *Geneva* .................. | 26 |
| | The Owners agree to let and the Charterers agree to hire the vessel from the | 27 |
| Duration | time of delivery for ~~about~~ *one Time Charter trip via West Australia to Egypt Red Sea* | 28 |
| | *with grains*.................................................................................... | 29 |
| | ........................................................ within below mentioned trading limits. | 30 |
| Sublet | Charterers shall have liberty to sublet the vessel for all or any part of the | 31 |
| | time covered by this Charter, but Charterers shall remain responsible for the | 32 |
| | fulfillment of this Charter. | 33 |
| Delivery | Vessel ~~shall be~~ *was* placed at the disposal of the Charterers *retroactive* .............. | 34 |
| | *Changjiangkou 30th March 2008 21.06 hours Lt. (outward sea pilot station of Shanghai)* | 35 |
| | .................................................................................................... | 36 |
| | .................................................................................................... | 37 |
| | ~~in such dock or at such berth or place~~ (where she may safely lie, always afloat, | 38 |
| | at all times of tide, ~~except as otherwise provided in Clause 6) as the Charterers~~ | 39 |
| | ~~may direct. If such dock, berth or place be not available, time shall count as~~ | 40 |
| | ~~provided in Clause 5~~. *Acceptance of delivery shall not constitute any waiver of Owners* | 41 |
| | *obligation hereunder* Vessel on her delivery shall be ready to receive cargo with | |
| | ~~clean swept holds~~ and tight, staunch, strong and in every way fitted for ~~ordi-~~ | 42 |
| | ~~nary cargo~~ service, having water ballast and with sufficient power to operate all | 43 |
| | cargo-handling gear simultaneously (and with full complement of officers and | 44 |
| | crew for a vessel of her tonnage), to be employed in carrying lawful merchan- | 45 |
| Dangerous | dise excluding ~~any goods of a dangerous, injurious, flammable or corrosive~~ | 46 |
| Cargo | ~~nature unless carried in accordance with the requirements or recom-~~ | 47 |
| | ~~mendations of the proper authorities of the state of the vessel's registry and of~~ | 48 |
| | ~~the states of ports of shipment and discharge and of any intermediate states or~~ | 49 |
| | ~~ports through whose waters the vessel must pass. Without prejudice to the~~ | 50 |
| Cargo | ~~generality of the foregoing, in addition the following are specifically excluded:~~ | 51 |
| Exclusions | ~~livestock of any description, arms, ammunition, explosives~~..................... | 52 |
| | *See cl. 30*................................................................................... | 53 |
| | .................................................................................................... | 54 |
| | .................................................................................................... | 55 |

56

**Trading**  57
The vessel shall be employed in such lawful trades *for the carriage of lawful*
*merchandise only* between safe ports and

**Limits**  58
places within *world-wide within Institute Warranty Limits* .................................................
........ excluding *Cuba, Israel, Sri Lanka (bunkering allowed) Angola, Haiti, Sierra Leone,*  59
*otherwise as per clause 87 (Conwartime 1993) North Korea and Cambodia but subject*  60
*always to instructions and/or recommendations issued by the country of the Vessel's flag*  61
*from time to time. From time to time Owners/Charterers to mutually review the list of*  62
*excluded countries. Further excluding CIS Pacific Ports - subject to change of rules for*
*Gypsy Moth is changed, Owners and Charterers shall discuss it again. Owners is not*
*allowed to trade to the ports/area which are prohibited from trading by the United Nations*
*and/or International Organisation of the United Nations. Charterers are not allowed to*
*send vessel for whatsoever purpose directly from Taiwan to Mainland China unless calling*
*an intermediate port neither in Taiwan nor in Mainland China subject to change of rules*
*for direct sailing in which case Charterers and Owners shall discuss it again. Charterers*
*have the option to break I.W.L. against paying the extra insurance charged by the Owners*
*insurance company which not to exceed General London Tariff.*

as the Charterers or their agents shall direct, on the following conditions:  63

**Owners**  1. The Owners shall provide and pay for the insurance of the vessel and  64
**to**  for all provisions, cabin, deck, engine-room and other necessary stores, in-  65
**Provide**  cluding boiler water, *drinking, water and lubricating oil*; shall pay for wages, consular  66
shipping and discharging
fees of the crew and charges for port services pertaining to the crew; shall  67
maintain vessel's class and keep her in a thoroughly efficient state in hull,  68
machinery and equipment for and during the service.  69

**Charterers**  2. The Charterers, while the vessel is on hire, shall provide and pay for all  70
**to**  the fuel except *lubricating oil ~~as otherwise agreed~~*; port charges *including garbage*  71
*removal, customary/compulsory* , pilotages *including Skaw and Bosphorus pilot,* .
towages,*boatages on Charterers' Business* agen-

**Provide**  cies, commissions, consular charges (except those pertaining to individual  72
crew members or flag of the vessel), and all other usual expenses except those  73
stated in Clause 1, but when the vessel puts into a port for causes for which  74
vessel is responsible, then all such charges incurred shall be paid by the  75
Owners. Fumigations ordered because of illness of the crew shall be for  76
Owners' account. ~~Fumigations ordered because of cargoes carried or ports~~  77
~~visited while vessel is employed under this Charter shall be for Charterers'~~  78
~~account.~~ All other fumigations shall be for Charterers' account ~~after vessel has~~  79
~~been on charter for a continuous period of six months or more.~~  80
Charterers shall provide necessary dunnage *lashing materials* and shifting  81
boards, also
any extra fittings requisite for a special trade or unusual cargo, but Owners  82
shall allow them the use of any dunnage and shifting boards already aboard  83
vessel.  84

**Bunkers**  3. ~~The Charterers on delivery, and the Owners on redelivery, shall take~~  85
**on**  ~~over and pay for all fuel and diesel oil remaining on board the vessel as~~  86
**Delivery**  ~~hereunder. The vessel shall be delivered with:~~ ....................................................  87
**and**  ~~long/metric* tons of fuel oil at the price of~~ ..........................................~~per ton;~~  88
**Redelivery**  ....................................................~~tons of diesel oil at the price of~~ .........................  89
~~per ton. The vessel shall be redelivered with:~~ ...............................................  90
~~tons of fuel oil at the price of~~ ....................................~~per ton;~~...............................  91
....................................~~tons of diesel oil at the price of~~ ...........................~~per ton~~  92
93
94
~~(*Same tons apply throughout this clause)~~ *See cl.69*  95

**Rate of**  4. The Charterers shall pay for the use and hire of the said vessel at the  96
**Hire**  rate of *US$ 49,500 (fortynine thousand five hundred) per day pro rata including overtime*  97
~~daily,~~ or

...................................................................... United States Currency  98
~~per ton on vessel's total deadweight carrying capacity, including bunkers and~~  99
~~stores, or~~ .......................................................~~summer freeboard, per calendar month,~~  100
commencing on and from the *time* ~~day~~ of her delivery, as aforesaid, and at and after  101
the same rate for any part of a *day* ~~month~~; hire shall continue until the hour of the  102

**Redelivery**  day of her redelivery *based on GMT* in like good order and condition, ordinary wear  103
and tear

**Areas and**  excepted, to the Owners (unless vessel lost) ~~at~~- *on dropping last outward sea pilot*  104

**Notices**          *Adabiya* ......................................................................................................................          105

......................................................................................................................          106

...................................................................... unless otherwise mutually agreed.          107

Charterers shall give Owners not less than *20*.......................................... days notice          108
of vessel's expected date of redelivery and probable port *which to be followed by 14*          109
*and 7 days prior estimated redelivery notices which are given to best knowledgment but*          110
*subject to changes and congestion at ports called and 3 days definite notice*

**Hire**                    5.  Payment of hire shall be made so as to be received by Owners or their          111
**Payment**          designated payee in ~~New York~~ i.e. *See cl. 74. The Owners shall pay lifting charges*          112
**and**                  *which are occurred at the Owners' bank however, any other charges for remittance*          113
**Commencement**  *including remittance charges and cable charges which are occurred at the Charterers'*          114
                           *remitting bank shall be paid by Charterers.*          in United States Currency, in funds          115
                           available to the Owners on the due date, semi-monthly in advance, and for the          116
                           last half month or part of same the approximate amount of hire, and should          117
                           same not cover the actual time, hire shall be paid for the balance day by day as          118
                           it becomes due, if so required by Owners. Failing the punctual and regular          119
                           payment of the hire, or on any *material* breach of this Charter, the Owners shall be at          120
                           liberty to withdraw the vessel from the service of the Charterers without pre-          121
                           judice to any claims they (the Owners) may otherwise have on the Charterers.          122
                                 Time shall count from *the time of delivery* ~~7 A.M. on the working day following~~          123
                           ~~that on~~
                           which written notice of readiness *by letter or fax or telex or cable* has been given to          124
                           Charterers or their agents
                           ~~before 4 P.M., but if required by Charterers, they shall have the privilege of~~          125
                           ~~using vessel at once, in which case the vessel will be on hire from the com-~~          126
                           ~~mencement of work.~~          127

**Cash**                    Cash for vessel's ordinary disbursements at any port may be advanced,          128
**Advances**          as required by the Captain, *and/or by the Owners* by the Charterers or their agents,          129
                           subject to 2 1/2
                           percent commission and such advances shall be deducted from the hire. The          130
                           Charterers, however, shall in no way be responsible for the application of such          131
                           advances.          132

**Berths**                    6.  Vessel shall be loaded and discharged in any dock or at any berth or          133
                           place that Charterers or their agents may direct, provided the vessel can safely          134
                           lie always afloat at any time of tide, except at such places where it is customary          135
                           for similar size vessels to safely lie aground. *except ports in Argentina, Brazil and*          136
                           *Uruguay*

**Spaces**                    7.  The whole reach of the vessel's holds, decks, and usual places of          137
**Available**          loading (not more than she can reasonably and safely stow and carry), also          138
                           accommodations for supercargo, if carried, shall be at the Charterers' dis-          139
                           posal, reserving only proper and sufficient space for ship's officers, crew,          140
                           tackle, apparel, furniture, provisions, stores and fuel. *No passenger are to be allowed*          141

**Prosecution**          8.  The Captain shall prosecute his voyages with *utmost* due despatch, and shall          142
**of**                      render all customary assistance with ship's crew and boats. The Captain          143
**Voyages**          (although appointed by the Owners) shall be under the orders and directions of          144
                           the Charterers as regards employment and agency; and Charterers are to          145
                           perform all cargo handling at their expense under the supervision of the          146
                           Captain, *who to be responsible for the seaworthiness of the vessel and* who is to sign the          147
                           bills of lading for cargo as presented in conformity
                           with mate's or tally clerk's receipts. However, at Charterers' option, the Chart-          148
                           erers or their agents may sign bills of lading on behalf of the Captain always in          149
**Bills**                  conformity with mate's or tally clerk's receipts. All bills of lading shall be          150
**of**                      without prejudice to this Charter and the Charterers shall indemnify the Own-          151
**Lading**          ers against all consequences or liabilities which may arise from any inconsis-          152
                           tency between this Charter and any bills of lading or waybills signed by the          153
                           Charterers or their agents or by the Captain at their request.          154

**Conduct of**          9.  If the Charterers shall have reason to be dissatisfied with the conduct of          155
**Captain**          the Captain or officers, the Owners shall, on receiving particulars of the          156
                           complaint, *reasonably requested by the Charterers writing* investigate the same, and, if          157
                           necessary, make a change in the
                           appointments.          158

**Supercargo**          10. The Charterers are entitled to appoint a supercargo, who shall accom-          159
**and**                  pany the vessel and see that voyages are prosecuted with *utmost* due despatch. He          160
                           is
**Meals**          to be furnished with free accommodation and same fare as provided for          161

Captain's table, Charterers paying at the rate of *US$ 10.00* ............................. per day.  162
Owners shall victual pilots and customs officers, and also, when authorized by  163
Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,  164
~~Charterers paying at the rate of ............................... per meal for all such victual-~~  165
~~ling.~~ *Expense for such victualling are covered under the lumpsum as set out under clause*  166
*65*

Sailing                11. The Charterers shall furnish the Captain from time to time with all  167
Orders         requisite instructions and sailing directions, in writing, and the Captain shall  168
and Logs       keep full and correct deck and engine logs of the voyage or voyages, which are  169
               to be patent to the Charterers or their agents, and furnish the Charterers, their  170
               agents or supercargo, when required, with a true copy of such deck and engine  171
               logs, showing the course of the vessel, distance run and the consumption of  172
               fuel *and the direction and force for wind and sea all in English.*  173

Ventilation            12. The Captain shall use diligence in caring for the ventilation of the  174
               cargo.  175

Continuation           13. ~~The Charterers shall have the option of continuing this Charter for a~~  176
               ~~further period of...........................................................................................~~  177
               ..........................................................................................................................  178

Laydays/               14. ~~If required by Charterers, time shall not commence before...........................~~  179
Cancelling     ~~......................................................and should vessel not have given written~~  180
               ~~notice of readiness on or before..............................................................but not~~  181
               ~~later than 4 P.M. Charterers or their agents shall have the option of cancelling~~  182
               ~~this Charter at any time not later than the day of vessel's readiness.~~  183

Off                    15. In the event of the loss of time from deficiency and/or default *and/or strike or*  184
               *sabotage by* of officers

Hire           or crew or deficiency of stores, fire, breakdown of, or damages to, hull,  185
               machinery or equipment, grounding, detention by average accidents to ship or  186
               cargo unless resulting from inherent vice, quality or defect of the cargo,  187
               drydocking for the purpose of examination or painting bottom, or by any other  188
               similar cause preventing the full working of the vessel, the payment of hire and  189
               overtime, if any, shall cease for the time thereby lost. Should the vessel deviate  190
               or put back during a voyage, contrary to the orders or directions of the  191
               Charterers, for any reason other than accident to the cargo, the hire is to be  192
               suspended from the time of her deviating or putting back until she is again in  193
               the same or equidistant position from the destination and the voyage resumed  194
               therefrom. All fuel used by the vessel while off hire shall be for Owners'  195
               account.*Bunkers consumed during off hire for whatever reason shall be calculated at*  196
               *contact prices at last bunkering port.* In the event of the vessel being driven into port or
               to anchorage
               through stress of weather, trading to shallow harbors or to rivers or ports with  197
               bars, any detention of the vessel and/or expenses resulting from such deten-  198
               tion shall be for the Charterers' account. If upon the voyage the speed be  199
               reduced by defect in, or breakdown of, any part of her hull, machinery or  200
               equipment, the time so lost, and the cost of any extra fuel consumed in  201
               consequence thereof, and all extra expenses shall be deducted from the hire.  202

Total                  16. Should the vessel be lost, money paid in advance and not earned  203
Loss           (reckoning from the date of loss or being last heard of) shall be returned to the  204
               Charterers at once.  205

Exceptions             The act of God, enemies, fire, restraint of princes, rulers and people,  206
               and all dangers and accidents of the seas, rivers, machinery, boilers and steam  207
               navigation, and errors of navigation throughout this Charter, always mutually  208
               excepted.  209

Liberties              The vessel shall have the liberty to sail with or without pilots, to tow and  210
               to be towed, to assist vessels in distress, and to deviate for the purpose of  211
               saving life and property.  212

Arbitration            17. Should any dispute arise between Owners and the Charterers, the  213
               matter in dispute shall be referred to three persons at *London in accordance with*  214
               *English Law, arbitration to be settled according to L.M.A.* New York, one to be
               appointed by each of the parties hereto, and the third by the two so chosen;  215
               their decision, or that of any two of them, shall be final and for the purpose of  216
               enforcing any award this agreement may be made a rule of the Court. The  217
               arbitrators shall be commercial men conversant with shipping matters.  218

Liens                  18. The Owners shall have a lien upon all cargoes and all sub-freights for  219
               any amounts due under this Charter, including general average contributions,  220
               and the Charterers shall have a lien on the ship for all monies paid in advance  221

|  | and not earned, and any overpaid hire or excess deposit to be returned at once. | 222 |
|  | Charterers will not suffer, nor permit to be continued, any lien or encumbrance | 223 |
|  | incurred by them or their agents, which might have priority over the title and | 224 |
|  | interest of the Owners in the vessel. | 225 |
| `Salvage | 19. All derelicts and salvage shall be for Owners' and Charterers' equal | 226 |
|  | benefit after deducting Owners' and Charterers' expenses and crew's propor- | 227 |
|  | tion. | 228 |
| General | General average shall be adjusted, according to York-Antwerp Rules | 229 |
| Average | 1974,*as amended in 1994 and subsequent amendments in London* ~~at such port or place~~ | 230 |
|  | ~~in the United States as may be selected by the~~ | |
|  | ~~Owners and as to matters not provided for by these Rules, according to the~~ | 231 |
|  | ~~laws and usage at the port of New York. In such adjustment disbursements in~~ | 232 |
|  | ~~foreign currencies shall be exchanged into United States money at the rate~~ | 233 |
|  | ~~prevailing on the dates made and allowances for damage to cargo claimed in~~ | 234 |
|  | ~~foreign currency shall be converted at the rate prevailing on the last day of~~ | 235 |
|  | ~~discharge at the port or place of final discharge of such damaged cargo from~~ | 236 |
|  | the ship. Average agreement or bond and such additional security, as may be | 237 |
|  | required by the Owners, must be furnished before delivery of the goods. Such | 238 |
|  | ~~cash deposit~~ *security acceptable by the Owners* as the Owners or their agents may | 239 |
|  | deem sufficient as additional | |
|  | security for the contribution of the goods and for any salvage and special | 240 |
|  | charges thereon, shall, if required, be made by the goods, shippers, consign- | 241 |
|  | ees or owners of the goods to the Owners before delivery. Such ~~deposit shall,~~ | 242 |
|  | *security acceptable by Owners shall* at the option of the Owners, be payable in United | 243 |
|  | States money and ~~sent remitted~~ to | |
|  | the adjuster. ~~When so remitted the deposit shall be held in a special account at~~ | 244 |
|  | ~~the place of adjustment in the name of the adjuster pending settlement of the~~ | 245 |
|  | ~~general average and refunds or credit balances, if any, shall be paid in United~~ | 246 |
|  | ~~States money.~~ | 247 |
| York- | Charterers shall procure that all bills of lading issued during the cur- | 248 |
| Antwerp | rency of the Charter will contain a provision to the effect that general average | 249 |
| Rules | shall be adjusted according to York-Antwerp Rules 1974 *as amended in 1994 and* | 250 |
|  | *subsequent amendments in London* and will include the | |
|  | "New Jason Clause" as per Clause 23. | 251 |
| Drydocking | 20. ~~The vessel was last drydocked *See clause 75*.................................~~ The | 252 |
|  | Owners shall have the option to place the vessel in drydock during the cur- | 253 |
|  | rency of this Charter at a convenient time and place, to be mutually agreed | 254 |
|  | upon between Owners and Charterers, for bottom cleaning and painting | 255 |
|  | and/or repair as required by class or dictated by circumstances. Payment of | 256 |
|  | hire shall be suspended upon deviation from Charterers' service until vessel is | 257 |
|  | again placed at Charterers' disposal at a point not less favorable to Charterers | 258 |
|  | than when the hire was suspended ............................................................. | 259 |
|  | ............................................................................................................. | 260 |
|  | ............................................................................................................. | 261 |
| Cargo | 21. Owners shall maintain the cargo-handling gear of the ship which is as | 262 |
| Gear | follows:........................................................................................................ | 263 |
|  | ............................................................................................................. | 264 |
|  | ............................................................................................................. | 265 |
|  | providing gear (for all derricks or cranes) capable of lifting capacity as de- | 266 |
|  | scribed. Owners shall also provide on the vessel for night work lights as on | 267 |
|  | board, but all additional lights over those on board shall be at Charterers' | 268 |
|  | expense. The Charterers shall have the use of any gear on board the vessel. If | 269 |
|  | required by Charterers, the vessel shall work night and day and all cargo- | 270 |
|  | handling gear shall be at Charterers' disposal during loading and discharging. | 271 |
| Stevedore | In the event of disabled cargo-handling gear, or insufficient power to operate | 272 |
| Stand-by | the same, the vessel is to be considered to be off hire to the extent that time is | 273 |
|  | actually lost to the Charterers and Owners to pay stevedore stand-by charges | 274 |
|  | occasioned thereby. If required by the Charterers, the Owners are to bear the | 275 |
|  | cost of hiring shore gear in lieu thereof. | 276 |
| Crew | 22. ~~In lieu of any overtime payments to officers and crew for work ordered~~ | 277 |
| Overtime | ~~by Charterers or their agents, Charterers shall pay Owners $...........................~~ | 278 |
|  | ~~per month or pro rata.~~ | 279 |
| Clauses | 23. The following clause is to be included in all bills of lading issued | 280 |
| Paramount | hereunder: | 281 |
|  | This bill of lading shall have effect subject to the provisions of the | 282 |

Carriage of Goods by Sea Act of the United States, the Hague Rules, or the 263
Hague-Visby Rules, as applicable, or such other similar national legislation as 264
may mandatorily apply by virtue of origin or destination of the bills of lading, 265
which shall be deemed to be incorporated herein and nothing herein con- 266
tained shall be deemed a surrender by the carrier of any of its rights or 267
immunities or an increase of any of its responsibilities or liabilities under said 268
applicable Act. If any term of this bill of lading be repugnant to said applicable 269
Act to any extent, such term shall be void to that extent, but no further. 270

This Charter is subject to the following clauses all of which are to be 291
included in all bills of lading issued hereunder: 292

**New Both-to-Blame Collision Clause**

If the ship comes into collision with another ship as a result of the 293
negligence of the other ship and any act, neglect or default of the master, 294
mariner, pilot or the servants of the carrier in the navigation or in the manage- 295
ment of the ship, the owners of the goods carried hereunder will indemnify the 296
carrier against all loss or liability to the other or non-carrying ship or her 297
owners insofar as such loss or liability represents loss of, or damage to, or any 298
claim whatsoever of the owners of said goods, paid or payable by the other or 299
non-carrying ship or her owners to the owners of said goods and set off, 300
recouped or recovered by the other or non-carrying ship or her owners as part 301
of their claim against the carrying ship or carrier. 302

The foregoing provisions shall also apply where the owners, operators 303
or those in charge of any ships or objects other than, or in addition to, the 304
colliding ships or objects are at fault in respect to a collision or contact. 305

**New Jason Clause**

In the event of accident, danger, damage or disaster before or after 306
commencement of the voyage resulting from any cause whatsoever, whether 307
due to negligence or not, for which, or for the consequences of which, the 308
carrier is not responsible, by statute, contract, or otherwise, the goods, ship- 309
pers, consignees, or owners of the goods shall contribute with the carrier in 310
general average to the payment of any sacrifices, losses, or expenses of a 311
general average nature that may be made or incurred, and shall pay salvage 312
and special charges incurred in respect of the goods. 313

If a salving ship is owned or operated by the carrier, salvage shall be 314
paid for as fully as if salving ship or ships belonged to strangers. Such deposit 315
as the carrier or his agents may deem sufficient to cover the estimated con- 316
tribution of the goods and any salvage and special charges thereon shall, if 317
required, be made by the goods, shippers, consignees or owners of the goods 318
to the carrier before delivery. 319

**War Clauses**

~~(a) No contraband of war shall be shipped. Vessel shall not be re- 320
quired, without the consent of Owners, which shall not be unreasonably 321
withheld, to enter any port or zone which is involved in a state of war, warlike 322
operations, or hostilities, civil strife, insurrection or piracy whether there be a 323
declaration of war or not, where vessel, cargo or crew might reasonably be 324
expected to be subject to capture, seizure or arrest, or to a hostile act by a 325
belligerent power (the term "power" meaning any de jure or de facto authority 326
or any purported governmental organization maintaining naval, military or air 327
forces).~~ 328

~~(b) If such consent is given by Owners, Charterers will pay the provable 329
additional cost of insuring vessel against hull war risks in an amount equal to 330
the value under her ordinary hull policy but not exceeding a valuation of 331
...........................................................In addition, Owners may purchase and Charterers 332
will pay for war risk insurance on ancillary risks such as loss of hire, freight 333
disbursements, total loss, blocking and trapping, etc. If such insurance is not 334
obtainable commercially or through a government program, vessel shall not 335
be required to enter or remain at any such port or zone.~~ 336

~~(c) In the event of the existence of the conditions described in (a) 337
subsequent to the date of this Charter, or while vessel is on hire under this 338
Charter, Charterers shall, in respect of voyages to any such port or zone 339
assume the provable additional cost of wages and insurance properly incurred 340
in connection with master, officers and crew as a consequence of such war, 341
warlike operations or hostilities. (see clause 66)~~ 342

**Ice**

24. The vessel shall not be required to enter or remain in any icebound port 343
or area, nor any port or area where lights or lightships have been or are about 344
to be withdrawn by reason of ice, nor where there is risk that in the ordinary 345
course of things the vessel will not be able on account of ice to safely enter and 346
remain in the port or area or to get out after having completed loading or 347

|  |  | 348 |
|---|---|---|
|  | discharging. *Vessel not to force ice nor follow icebreaker.* | |
| Navigation | 25. Nothing herein stated is to be construed as a demise of the vessel to the | 349 |
|  | Time Charterers. The Owners shall remain responsible for the navigation of the | 350 |
|  | vessel, acts of pilots and tug boats, insurance, crew, and all other similar | 351 |
|  | matters, same as when trading for their own account. | 352 |
| Commissions | 26. A commission of *0.625* ..................................... percent is payable by the vessel | 353 |
|  | and Owners to *to Nolarma as agents of Starling Ventures LLC, New York deductible* | 354 |
|  | *from hire payment(s) plus 0.625 % to Stehn & co.* ............................. | 355 |
|  | on hire earned and paid under this Charter, and also upon any continuation or | 356 |
|  | extension of this Charter. | 357 |
| Address | 27. An address commission of *3.75* .................................................... percent | 358 |
|  | is payable to *Charterers*.................................................................................. | 359 |
|  | ............................................................................................................................ | 360 |
|  | on hire earned and paid under this Charter. | 361 |
| Rider | Rider Clauses *28 -93* ......................................................................... as at- | 362 |
|  |  | 363 |

tached hereto are incorporated in this Charter.

*THE OWNERS:*                    *THE CHARTERERS:*

## Rider of Suggested Additional Clauses

(None of these Clauses apply unless expressly agreed during the negotiations and enumerated in line 362)

| | | |
|---|---|---|
| Extension of Cancelling | 28. If it clearly appears that, despite the exercise of due diligence by Owners, the vessel will not be ready for delivery by the cancelling date, and provided Owners are able to state with reasonable certainty the date on which the vessel will be ready, they may, at the earliest seven days before the vessel is expected to sail for the port or place of delivery, require Charterers to declare whether or not they will cancel the Charter. Should Charterers elect not to cancel, or should they fail to reply within seven days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date of readiness for delivery as notified by Owners shall replace the original cancelling date. Should the vessel be further delayed, Owners shall be entitled to require further declarations of Charterers in accordance with this Clause. | 364<br>365<br>366<br>367<br>368<br>369<br>370<br>371<br>372<br>373<br>374 |
| Grace Period | 29. Where there is failure to make "punctual and regular payment" of hire, Charterers shall be given by Owners two clear banking days (as recognised at the agreed place of payment) written notice to rectify the failure, and when so rectified within those two days following Owners' notice, the payment shall stand as regular and punctual. Payment received by Owners' bank after the original due date will bear interest at the rate of 0.1 percent per day which shall be payable immediately by Charterers in addition to hire.<br>    At any time while hire is outstanding the Owners shall be absolutely entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof in respect of which the Charterers hereby indemnify the Owners and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account. | 375<br>376<br>377<br>378<br>379<br>380<br>381<br>382<br>383<br>384<br>385<br>386<br>387 |
| Cargo Claims | 30. Damage to and claims on cargo shall be for Owners' account if caused by unseaworthiness of the vessel, but shall be for Charterers' account if caused by handling and stowage, including slackage. Claims for shortage ex ship shall be shared equally between Owners and Charterers. | 388<br>389<br>390<br>391 |
| War Cancellation | 31. In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: The United States of America, the United Kingdom, France, the Union of Soviet Socialist Republics, the People's Republic of China. See cl. 41 .............................................<br>................................................................................................................................<br><br>or in the event of the nation under whose flag the vessel sails becoming involved in war (whether there be a declaration of war or not), either the Owners or the Charterers may cancel this Charter. Whereupon the Charterers shall redeliver the vessel to the Owners in accordance with Clause 4; if she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 4 and except as aforesaid all other provisions of this Charter shall apply until redelivery. | 392<br>393<br>394<br>395<br>396<br>397<br>398<br>399<br>400<br>401<br>402<br>403<br>404<br>405<br>406<br>407<br>408 |
| War Bonus | 32. Any war bonus to officers and crew due to vessel's trading or cargo carried shall be for Charterers' account. | 409<br>410 |
| Requisition | 33. Should the vessel be requisitioned by the government of the vessel's flag during the period of this Charter, the vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by Owners. The period during which the vessel is on requisition to the said government shall count as part of the period provided for in this Charter.<br>    If the period of requisition exceeds .................................................months, either party shall have the option of cancelling this Charter and no consequential claim may be made by either party. | 411<br>412<br>413<br>414<br>415<br>416<br>417<br>418<br>419 |
| On/Off-hire Survey | 34. Prior to delivery and redelivery the parties shall each appoint surveyors, for their respective accounts, who shall conduct joint on hire/off hire surveys. A single report shall be prepared on each occasion and signed by each surveyor, without prejudice to his right to file a separate report setting | 420<br>421<br>422<br>423 |

~~forth items upon which the surveyors cannot agree. If either party fails to have~~ 424
~~a representative attend the survey and sign the joint survey report, such party~~ 425
~~shall nevertheless be bound for all purposes by the findings in any report~~ 426
~~prepared by the other party. On-hire survey shall be on Charterers' time and~~ 427
~~off-hire survey on Owners' time.~~ 428

**Stevedore Damage**

~~35. Any damage caused by stevedores during the currency of this Charter~~ 429
~~shall be reported by Captain to Charterers or their agents, in writing, within 24~~ 430
~~hours of the occurrence or as soon as possible thereafter. The Captain shall~~ 431
~~use his best efforts to obtain written acknowledgement by responsible parties~~ 432
~~causing damage unless damage should have been made good in the mean-~~ 433
~~time.~~ 434

~~Stevedore damages involving seaworthiness shall be repaired without~~ 435
~~delay to the vessel after each occurrence in Charterers' time and shall be paid~~ 436
~~for by the Charterers. Other minor repairs shall be done at the same time, but if~~ 437
~~this is not possible, same shall be repaired while vessel is in drydock in~~ 438
~~Owners' time, provided this does not interfere with Owners' repair work, or by~~ 439
~~vessel's crew at Owners' convenience. All costs of such repairs shall be for~~ 440
~~Charterers' account. Any time spent in repairing stevedore-damage shall be for~~ 441
~~Charterers' account.~~ 442

~~Charterers shall pay for stevedore damages whether or not payment~~ 443
~~has been made by stevedores to Charterers.~~ *See cl.49* 444

**Charterers' Colors**

36. Charterers shall have the privilege of flying their own house flag and 445
painting the vessel with their own markings. The vessel shall be repainted in 446
Owners' colors before termination of the Charter. Cost and time of painting, 447
maintaining and repainting those changes effected by Charterers shall be for 448
Charterers' account. 449

**Return Premium**

37. Charterers shall have the benefit of any return insurance premium 450
receivable by Owners from their underwriters as and when received from 451
underwriters by reason of vessel being in port for a minimum period of 30 days 452
if on full hire for this period or pro rata for the time actually on hire. 453

38. The vessel shall be off hire during any time lost on account of vessel's 454
non-compliance with government and/or state and/or provincial regulations 455
pertaining to water pollution. In cases where vessel calls at a U.S. port, Owners 456
warrant to have secured and carry on board the vessel a Certificate of Financial 457
Responsibility as required under U.S. law. 458

This Charter Party is a computer generated copy of the ASBATIME (1981) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licencee or end user as appropiate and not by the author.

## RIDER CLAUSES TO THE CHARTER PARTY DATED 04TH APRIL, 2008
## M/V 'B OCEANIA'

**CLAUSE 28: VESSELS PARTICULARS**
**B. OCEANIA**
A) BUILT - 1990
B) FLAG - MALTESE
C) DWAT - 70,424
D) DRAFT (SSW) - 13.218 M
E) GRT/NRT - 38,337 / 23,174
  SUEZ GRT/NRT - 38,841.59 / 34,891.11
  PANAMA GRT/NRT - 39,073.18 / 32,360.01
F) LOA/BEAM - 229.98 / 32.20 M
G) GRAIN IN MAIN HOLDS - 82,944.1 CBM - 2,929,170.9 CBFT GRAIN
H) BALE - 78,796.9 CBM / 2,782,712.3 CU FT
I) HOLDS/HATCHES - 7/7
J) HATCH SIZES - N. 1: 14.94 X 11 - NO. 2 - NO. 7: 14.94 M X 15 M
K) GEAR - 4 CRANES AND 4 GRABS
L) TYPE OF HATCHCOVERS (WHICH TO BE IN GOOD WORKING CONDITION) -  KVARNER, SIDE ROLLING
M) TPI/TPC SUMMER MARKS  -
  DWT/TPC AT 12,0 M SW  61,100 MTS  67,75
  12,1 M SW  61,400 MTS  67,80
  12,5 M SW  65,250 MTS  68,20
N) BUNKER CAPACITIES - IFO 2474 - BSS 85 PCT CAP MDO 211
O) CUBIC BREAKDOWN BY HOLD - CUFT GRAIN
  BALE - 78,796.9 CBM/ 2,782,712.3 CU.FT
  HOLDWISE GRAIN - AS PER ABOVE
  HOLDWISE BALE - 1. 9,978.6/ 352,394.6  2. 11,554.4/ 408,042.8
  3. 11,447.6/ 405,332.0  4. 11,432.6/ 403,741.7
  5. 11,575.1/ 408,774.1  6. 11,578.0/ 408,878.1
  7. 11,200,6/ 395,549.0
  DISTANCE FROM RAILING TO HATCH COVERS EACH SIDE - 8,8 M
  DISTANCE. FROM BOW TO FORE OF 1ST HOLD OPENING - 20,4 M
  DISTANCE. FROM STERN TO AFT OF LAST HOLD OPENING - 44,2 M
P) CONSTANTS INCL FRESH WATER
  CONSTANTS EXCL FW 460 MTS - FW - 329 MTS
Q) PORT CONSUMPTION
  3.5 METRIC TONS MDO WORKING 24 HOURS
  1 METRIC TON MDO ONLY
R) SPEEDS/CONSUMPTIONS - VESSEL CAPABLE OF STEAMING AND MAINTAINING
  ABOUT 12.75 KNOTS ON ABOUT 30.5 MT IFO LADEN
  ABOUT 12.75 KNOTS ON ABOUT 29.5 MT IFO BALLAST
  OTHER SPEEDS/CONSUMPTIONS:
  FUEL SPECS : IFO 380CST ISO 8217:2005 (F-RMG 35)
MDO ISO 8217:2005 (F-DMB) ALTERNATIVELY MGO DMA STABLE AND FREE OF LUBS/CHEMS/OTHER
WASTES FUELS ONLY + DIFFERENT SOURCED FUELS NOT TO BE MIXED IN VESSELS TANKS  MANEUVERS:
M/E  CONSUMES  MDO  WHILST  ENGAGED  IN  MANEUVERS,I/O  PORTS/LOCKS,  SAILING
NARROW/SHALLOW/CONFINED WATERS/CANALS/ WATERWAYS/RIVERS/ESTUARIES ETC
S) WATER LINE TO TOP OF HATCHCOAMING IN FULLY BALLASTED CONDITION - 13.2 M
T) LAST 3 CARGOES/CHARTERERS - REVERTING
U) VESSELS CLASS - 100 A1
V) H + M VALUE /COVERED WITH - 30,000,000
W) LAST DRY DOCK /SPECIAL SURVEY - VSL IS ACTUALLY IN HK FOR DRY DOCK


(CONT.)

1

28. (CONT.)
X) VSLS CONTACT DETAILS (CALL SIGN/INMARSAT TLX/FAX AND /EMAIL
  PHONE: 00873 761137430-1
  FAX : 00873 761137432
  TELEX: 0583 425659611
  E MAIL: BOCEANIAC1@SKYFILE-C.COM

Y) VSLS I M O  NUMBER 8806515

OWNERS WARRANT :-

- VESSEL IS SELFTRIMMING SINGLE DECK BULKCARRIER (AND WAS ORIGINALLY CONSTRUCTED AS A BULKCARRIER)
- VESSEL HAS CLEAR UNOBSTRUCTED MAIN HOLDS
- VESSEL IS AUSTRALIAN HOLD LADDERS FITTED
- VESSEL DOES NOT HAVE ANY HORIZONTAL FRAMES AND/OR BEAMS WITHIN HOLDS
- VESSEL DOES NOT HAVE A CENTERLINE BULKHEAD/BEAM OR ANY OTHER OBSTRUCTIONS.
- VESSEL HAS NO DEEP TANKS OR COMPARTMENTS THAT WERE ORIGINALLY
  CONSTRUCTED AS DEEP TANKS
- VESSELS HAS NO REEFER SPACE OR SPECIAL CARGO LOCKER SPACE.
- CARGO TO BE LOADED IN MAIN HOLDS ONLY
- VESSEL TO BE STEEL FLOORED THROUGHOUT
- IF GEARED CHARTERERS TO HAVE FREE USE OF VESSEL GEAR WHICH IS TO BE KEPT IN FULL WORKING ORDER FOR IMMEDIATE USE THOUGHOUT THE CURRENCY OF THE C/P AND SERVES ALL HATCHES
- ENGINE/BRIDGE AFT
- VESSEL/CREW AND OFFICE TO BE ITF APPROVED

OWNERS WARRANT, THAT DURING THE CURRENCY OF THIS CHARTER PARTY:-

- VESSEL SHALL NOT CHANGE OWNERSHIP OR CLASS WITHOUT CHARTERERS' WRITTEN CONSENT
- VESSEL'S HULL AND MACHINERY INSURANCE SHALL BE FULLY MAINTAINED AND WILL NOT BE CHANGED.
- VESSEL IS FULLY PANDI COVERED, WHICH SHALL BE MAINTAINED
- VESSEL WILL NOT BE SCHEDULED FOR BREAK UP OR SOLD FOR SCRAP UPON COMPLETION OF THIS CHARTER. CHARTERERS ARE GRANTED A MARITIME LIEN ON THE VESSEL AND ARE ENTITLED TO DEDUCT FROM ANY SUMS DUE TO OWNERS FOR ALL DAMAGES ARISING FROM SUCH BREACH OF THIS WARRANTY
- VESSEL IS FULLY FITTED FOR CARRIAGE OF GRAINS AS PER SOLAS REGULATIONS WITHOUT BAGGING/STRAPPINGS/SECURING OF CARGO.IN CASE FULL CARGO LOADED OWISE ACCORDING TO SHIP'S STABILITY BOOKLET
- VESSEL HAS AND WILL HAS ALL LATEST REQUIRED, VALID AND UP TO DATE CERTIFICATES ON BOARD VALID THROUGHOUT THE CHARTER.
- VESSEL HAS NOT CALLED CIS PACIFIC PORTS IN THE LAST 2 YEARS AND IS FREE OF ASIAN GYPSY MOTH LARVAE/EGGS
- VESSEL HAS NOT BEEN DETAINED BY ANY PORT CONTROLS IN THE LAST 24MONTHS. IF VESSEL HAS BEEN DETAINED PLEASE ADVISE WHERE/WHEN AND FOR WHAT REASONS

COMMERCIAL MANAGER:
----------------
BULKER CHARTERING AND MANAGEMENT SA
PIAZZA MOLINOM NUOVO 17
6900 LUGANO - SVIZZERA


**CLAUSE 29. LAYDAYS/ CANCELLING**
DELETED. N.A.

**CLAUSE 30. CARGO**

CARGO: GRAINS. CARGO TO BE LOADED IN ACCORDANCE WITH IMO REGULATIONS AND THE INTERNATIONAL GROUP OF P AND I CLUBS RECOMMENDATIONS.

ALL OTHER CARGOES TO BE LOADED, STOWED, CARRIED AND DISCHARGED AS PER IMO REGULATIONS.

**CLAUSE 31. DEVIATION**

IF THE VESSEL PUTS BACK OR DEVIATES ON A VOYAGE BY REASON OF ANY ACCIDENT, TO LAND SICK OR INJURED SEAMAN, TO RECEIVE OR TO OFFER SALVAGE SERVICES, TO CARRY OUT WORKS PURSUANT TO THE QUALITY WARRANTY OR ANY OTHER PROVISION OF THE SHIPBUILDING CONTRACT, TO CARRY OUT MAINTENANCE WORK OR REPAIRS OR TO UNDERGO DRYDOCKING OR CLASSIFICATION SOCIETY SURVEYS, THE HIRE SHALL CEASE FOR THE ACTUAL TIME THEREBY LOST FROM THE TIME THE VESSEL PUTS BACK OR DEVIATES UNTIL SHE IS AGAIN AT THE SAME OR EQUIVALENT POSITION OR AT CHARTERERS' OPTION IN ANOTHER POSITION WHICH WILL NOT BE FURTHER AWAY THAN THE POSITION WHERE FROM THE VESSEL ORIGINALLY PUT BACK OR DEVIATED, AND THE VOYAGE RESUMED THEREFROM. DEVIATION TO SAVE LIFE IS NOT TO BE DEEMED A DEVIATION FOR THE PURPOSES OF THIS CLAUSE.

**CLAUSE 32. STEEL CARGO**

DELETED. N.A.

**CLAUSE 33. ON DECK CARGO**

THE CHARTERERS MAY LOAD CARGO ON DECK/HATCH COVERS SUBJECT TO APPROVAL OF BOTH THE OWNERS AND THE MASTER OF THE VESSEL AND IN THE MANNER SO AS NOT TO AFFECT THE VESSEL'S STABILITY AND STRENGTH OF DECK AND HATCHES. THE OWNERS/VESSEL SHALL NOT BE HELD RESPONSIBLE FOR LOSS OR DAMAGE TO DECK CARGO. BILL(S) OF LADING ISSUED, THEREFORE SHALL BE CLAUSED AS FOLLOWS: CARRIED ON DECK WITHOUT LIABILITY FOR LOSS OR DAMAGE HOWSOEVER CAUSED.

**CLAUSE 34. INSURANCE / WAR RISK INSURANCE / BONUS ETC.**

OWNERS CONFIRM THAT VESSEL WILL BE COVERED ON FULL TERMS AND FOR HER FULL VALUE OF US DOLLARS 30 MILLION FOR HULL AND MACHINERY INSURANCE AND WILL REMAIN SO FOR THE WHOLE DURATION OF THIS CHARTER. OWNERS HAVE THE OPTION TO ALTER THE VALUE OF THEIR HULL AND MACHINERY INSURANCE INFORMING CHARTERERS OF THE CHANGE.

CHARTERERS TO HAVE THE BENEFIT OF ANY RETURN INSURANCE PREMIUM RECEIVABLE BY OWNERS FROM UNDERWRITERS BY REASON OF VESSEL BEING IN PORT FOR A MINIMUM OF 30 DAYS PROVIDED VESSEL IS ON HIRE AND PROVIDED THERE IS SUCH RETURN INSURANCE PREMIUM.

FURTHERMORE, THE VESSEL WILL ALSO BE ENTERED IN THE LONDON STEAMSHIP P AND I ASSOCIATION (MEMBER OF THE INTERNATIONAL GROUP) ON FULL TERMS FOR THE DURATION OF THIS CHARTER. CHARTERERS TO HAVE THE BENEFIT OF THE OWNERS' P AND I CLUB COVER AS FAR AS THE RULES PERMIT.

THE VESSEL WILL ALSO BE COVERED BY A FIRST CLASS WAR RISK INSURANCE ASSOCIATION FOR THE WHOLE DURATION OF THIS CHARTER. THE BASIC WAR RISK INSURANCE PREMIUM SHALL BE FOR OWNERS' ACCOUNT AND ADDITIONAL PREMIUM AND CREW WAR BONUS SHALL BE FOR CHARTERERS' ACCOUNT. VALUATION FOR THE PURPOSE OF ESTIMATING SUCH ADDITIONAL PREMIUM IS AS FOLLOWS: VESSEL'S INSURED VALUE: US DOLLARS 30 MILLION.

FURTHERMORE THE VESSEL TO BE FULLY COVERED AGAINST POLLUTION BY OIL.

**CLAUSE 35. ISRAEL CALL AND ARAB BLACKLIST**

THE OWNERS GUARANTEE THAT NEITHER THE VESSEL, UNDER GLENCORE OWNERSHIP, NOR ANY OTHER VESSEL OWNED, MANAGED AND CONTROLLED BY THEM HAS EVER TRADED TO AN ISRAELI PORT AND WILL NOT CALL AT ANY SUCH PORT PRIOR TO OR DURING THE CHARTER. THE OWNERS ALSO GUARANTEE THAT NEITHER THE VESSEL NOR ANY OTHER VESSEL OWNED, MANAGED AND CONTROLLED BY THEM IS BLACKLISTED BY ANY ARAB COUNTRY.

**CLAUSE 36. PANAMA/SUEZ CANAL TRANSIT**
THE OWNERS GUARANTEE THAT THE VESSEL SHALL BE FULLY FITTED FOR PANAMA / SUEZ CANAL
TRANSIT AND IN POSSESSION OF VALID NECESSARY CERTIFICATE DURING THE CURRENCY OF THIS
CHARTER TO COMPLY WITH CURRENT REGULATIONS AND REQUIREMENT OF BOTH CANALS.

**CLAUSE 37. ITF**
THE OWNERS WARRANT THAT OFFICERS AND CREW OF THE VESSEL ARE COVERED FOR THE DURATION
OF THE CHARTER PARTY BY AN I.T.F. AGREEMENT OR OTHER BONA FIDE TRADE UNION AGREEMENT
CONFORMING TO I.T.F. STANDARDS. LOSS OF TIME AS A RESULT OF NON-COMPLIANCE SHALL BE
CONSIDERED AS OFF-HIRE AND ANY EXTRA EXPENSES INCURRED SHALL BE FOR OWNERS' ACCOUNT.
FURTHERMORE OWNERS WARRANT THAT THROUGHOUT THE DURATION OF THIS CHARTER, THE
VESSEL'S FLAG AND CREWING ARRANGEMENTS SHALL NOT INTERFERE WITH OR RESTRICT THE VESSEL'S
TRADING RESTRICTIONS OR EMPLOYMENTS, EXCEPT FOR CAUSES BEYOND THE CONTROL OF OWNERS.

**CLAUSE 38. FLAG / BOYCOTT**
THE VESSEL WILL FLY THE MALTESE FLAG.
IN CASE VESSEL IS BLACKLISTED AND/OR BOYCOTTED AND/OR DELAYED AND/OR RESTRICTED IN THE
USE OF ANY PORT, LOADING OR DISCHARGING FACILITIES, LABOUR, TUGS, OR PILOTAGE ASSISTANCE,
OWING TO VESSEL'S OWNERSHIP, FLAG, CREW, CREW COMPLEMENT OR CREW WAGES, HIRE SHALL
CEASE FOR ANY PERIOD OF ACTUAL TIME LOST THEREBY AND ALL DIRECTLY RELATED AND PROVEN
EXPENSES TO BE FOR OWNERS' ACCOUNT.

**CLAUSE 39. GRACE PERIOD**
WHERE THERE IS FAILURE TO MAKE "PUNCTUAL AND REGULAR PAYMENT" OF HIRE, THE CHARTERERS
SHALL BE GIVEN BY THE OWNERS THREE CLEAR BANKING DAYS (AS RECOGNIZED AT THE AGREED PLACE
OF PAYMENT) WRITTEN NOTICE TO RECTIFY THE FAILURE, AND WHEN SO RECTIFIED WITHIN THOSE
THREE DAYS FOLLOWING OWNERS' NOTICE, THE PAYMENT SHALL STAND AS REGULAR AND PUNCTUAL.

**CLAUSE 40. EXTENUATION OF OFF HIRE PERIOD**
DELETED.

**CLAUSE 41. WAR CANCELLATION**
IF MAJOR WAR BREAKS OUT BETWEEN ANY TWO OR MORE OF THE FOLLOWING COUNTRIES: UNITED
KINGDOM, USA, RUSSIA, PEOPLE'S REPUBLIC OF CHINA, JAPAN, GREECE, TURKEY DIRECTLY AFFECTING
THE PERFORMANCE OF THE CHARTER, BOTH THE OWNERS AND THE CHARTERERS SHALL HAVE THE
OPTION OF CANCELLING THIS CHARTER WITH MUTUAL AGREEMENT WHEREUPON THE CHARTERERS
SHALL REDELIVER THE VESSEL TO THE OWNERS IN ACCORDANCE WITH CLAUSE 4, IF SHE HAS CARGO
ON BOARD, AFTER DISCHARGING THEREOF AT DESTINATION OR, IF DEBARRED FROM REACHING OR
ENTERING IT, AT A NEAR OPEN AND SAFE PORT AS DIRECTED BY THE CHARTERERS, OR IF SHE HAS NO
CARGO ON BOARD AT A PORT AT WHICH SHE STAYS OR IF AT SEA AT A NEAR SAFE PORT AS DIRECTED
BY THE OWNERS.
IN ALL CASES HIRE SHALL BE PAID UNTIL THE VESSEL'S REDELIVERY.

**CLAUSE 42. REQUISITION**
SHOULD THE VESSEL BE REQUISITIONED BY THE GOVERNMENT OF THE VESSEL'S FLAG DURING THE
PERIOD OF THE CHARTER, THE VESSEL SHALL BE DEEMED TO BE OFF-HIRE DURING THE PERIOD OF
SUCH REQUISITION, AND ANY HIRE PAID BY THE SAID GOVERNMENT, IN RESPECT OF SUCH
REQUISITION PERIOD SHALL BE RETAINED BY THE OWNERS. IF THE PERIOD OF REQUISITION EXCEEDS
3 MONTHS, CHARTERERS SHALL HAVE THE OPTION OF CANCELLING THIS CHARTER AND NO
CONSEQUENTIAL CLAIM MAY BE MADE BY EITHER PARTY. THE PERIOD DURING WHICH THE VESSEL IS
ON REQUISITION SHALL COUNT AS PART OF THE PERIOD PROVIDED FOR THIS CHARTER.

**CLAUSE 43. DERATTING CERTIFICATE**
THE VESSEL SHALL BE DELIVERED WITH VALID DERATTING OR DERATTING EXEMPTION CERTIFICATE, IF SUCH CERTIFICATE DOES NOT COVER THE WHOLE PERIOD OF THIS CHARTER, COSTS OF RENEWAL OF CERTIFICATE AND FUMIGATION IF NECESSARY SHALL BE FOR OWNERS' ACCOUNT. ANY DETENTION AND EXTRA EXPENSES INCURRED THEREBY SHALL ALSO BE FOR THE OWNERS' ACCOUNT.

**CLAUSE 44. QUARANTINE**
NORMAL QUARANTINE TIME AND EXPENSES FOR THE VESSEL'S ENTERING PORT SHALL BE FOR CHARTERERS' ACCOUNT, BUT ANY TIME OF DETENTION AND EXPENSES FOR QUARANTINE DUE TO PESTILENCE, ILLNESS ARID ETC. OF MASTER, OFFICERS AND CREW SHALL BE FOR OWNERS' ACCOUNT. ANY DETENTION DUE TO PORTS CALLED OR CARGOES CARRIED TO BE FOR CHARTERERS' ACCOUNT. OWNERS GUARANTEE VESSEL HAS ON BOARD FITNESS CERTIFICATE ISSUED BY VESSEL' S CLASSIFICATION SOCIETY FOR CARRYING BULK CARGOES AS PER SOLAS 74, RULE 54, CHAPTER II-2 (A B C) AND AS PER IMO CODE FOR SAFE PRACTICE OF SOLID CARGOES.

**CLAUSE 45. HEALTH CERTIFICATE**
THE VESSEL SHALL BE IN POSSESSION OF NECESSARY CERTIFICATES TO COMPLY WITH SAFETY AND HEALTH REGULATIONS AND ALL CURRENT REQUIREMENTS AT ALL PORTS OF CALL DURING THIS CHARTER. THE MASTER, OFFICER AND CREW OF THE VESSEL HOLD VACCINATION CERTIFICATES AGAINST YELLOW FEVER, CHOLERA, ETC.

**CLAUSE 46. GRAIN LOADING CERTIFICATE**
THE OWNERS GUARANTEE THAT THE VESSEL IS A SELF-TRIMMING BULKER AND SHALL BE SUITABLE FOR CARRYING ALL KIND OF GRAIN IN BULK WITHOUT SHIFTING BOARD, BAGGING OR SECURING EXCEPT FOR SPECIAL SLACK HATCH CONDITION DEVIATED FROM STANDARD CONDITION SPECIFIED IN LOADING BOOKLET OF THE VESSEL. THE VESSEL SHALL HAVE THE LATEST GRAIN LOADING CERTIFICATE IN COMPLIANCE WITH IMO REGULATIONS ON BOARD.
THE VESSEL IS ALSO TO LOAD PART CARGOES OF GRAIN AND/OR OTHER CARGOES AND TO SHIFT BETWEEN PORTS WITH HOLDS EMPTY AND/OR SLACK SUBJECT TO THE MASTER'S APPROVAL WHICH SHOULD BE FULLY COMPLY WITH SOLAS REGULATION AND PORT REGULATION FOR STABILITY OF THE VESSEL.

**CLAUSE 47. CARGO GEAR AND EQUIPMENT**
THE VESSEL'S CARGO GEAR AND OTHER EQUIPMENTS SHALL COMPLY WITH REGULATIONS AND/OR REQUIREMENTS IN EFFECT AT PORT OR PORTS OF CALL AND CANALS AND COUNTRIES IN WHICH THE VESSEL WILL BE EMPLOYED. THE OWNERS ALSO GUARANTEE THAT THE VESSEL SHALL BE AT ALL TIMES IN POSSESSION OF VALID AND UP-TO-DATE GEAR CERTIFICATE ON BOARD TO COMPLY WITH SUCH REGULATIONS AND/OR REQUIREMENTS.
A PARTICULAR REFERENCE IS MADE TO THE U.S. DEPARTMENT OF LABOR SAFETY AND HEALTH REGULATIONS SET FORTH IN PART III CODE OF THE FEDERAL REGULATIONS AND ALL AUSTRALIAN NAVIGATION (LOADING AND UNLOADING SAFETY MEASURES) REGULATIONS, 1961 OR ANY AMENDMENTS   THERETO   AND   RELATED   REQUIREMENTS   AND   RECOMMENDATIONS. IF STEVEDORE, LONGSHOREMEN OR OTHER LABORS ARE NOT PERMITTED TO WORK BY REASON OF ANY FAILURE OF THE MASTER, THE OWNERS AND/OR THEIR AGENTS TO COMPLY WITH SUCH REGULATIONS OR BY REASON, THAT THE VESSEL IS NOT IN POSSESSION OF SUCH VALID AND UP-TO-DATE CERTIFICATES, THEN THE OWNERS SHALL MAKE IMMEDIATE CORRECTIVE MEASURES. THE CHARTERERS MAY SUSPEND HIRE FOR TIME LOST THEREBY AND THE OWNERS TO BE LIABLE FOR ANY ADDITIONAL COSTS INCURRED THEREBY.

**CLAUSE 48. WWF REQUIREMENT**
THE OWNERS GUARANTEE THAT THE CONSTRUCTION OF THE VESSEL WITH HER CARGO GEAR, FITTINGS AND OTHER EQUIPMENTS SHALL COMPLY WITH THE REQUIREMENTS AND/OR RECOMMENDATIONS OF AUSTRALIAN SHORE LABORS AND PILOTS.

## CLAUSE 49.  STEVEDORE DAMAGE

NOTWITHSTANDING ANYTHING AGREED TO THE CONTRARY, MASTER TO ENDEAVOUR TO SETTLE WITH STEVEDORES DIRECTLY FOR ANY STEVEDORE DAMAGE. THE CHARTERERS SHALL BE LIABLE FOR SUCH STEVEDORING DAMAGE ULTIMATELY, PROVIDED THE MASTER HAS NOTIFIED THE CHARTERERS AND/OR THEIR AGENTS IN WRITING WITHIN 24 HOURS BUT NOT LATER THAN DEPARTURE PORT OF OCCURRENCE, EXCEPT FOR HIDDEN DAMAGE WHICH TO BE NOTIFIED WITHIN 24 HOURS FROM DISCOVERY BUT NOT LATER THAN VESSEL'S REDELIVERY AND MASTER TO ENDEAVOUR TO OBTAIN THE ACKNOWLEDGMENT SIGNED BY RELEVANT PARTIES. SUCH NOTICE TO CHARTERERS TO SPECIFY THE DAMAGE IN DETAIL AND TO INVITE CHARTERERS TO APPOINT A SURVEYOR TO ASSESS THE EXTENT OF SUCH DAMAGE. HOWEVER IN CASE OF CHARTERERS' FAILURE TO COMPLY WITH OWNERS'/MASTER'S INVITATION FOR APPOINTMENT OF A SURVEYOR, THE CHARTERERS WILL BE OBLIGED TO ACCEPT THE OWNERS'/MASTER'S REPORT FROM THE DAMAGES' SPECIFICATION.

IN CASE OF ANY AND ALL DAMAGES AFFECTING VESSEL'S SEAWORTHINESS AND/OR AFFECTING THE TRADING CAPABILITIES OF THE VESSEL, THE CHARTERERS SHALL IMMEDIATELY ARRANGE FOR REPAIRS OF SUCH DAMAGE(S) AT THEIR EXPENSE AND VESSEL TO REMAIN ON HIRE UNTIL SUCH REPAIRS ARE COMPLETED AND IF REQUIRED PASSED BY THE VESSEL'S CLASSIFICATION SOCIETY.

ANY AND ALL DAMAGES NOT DESCRIBED ABOVE SHALL BE REPAIRED AT THE CHARTERERS' OPTION, BEFORE OR AFTER REDELIVERY CONCURRENTLY WITH THE OWNERS' WORK. IN SUCH CASE NO HIRE WILL BE PAID TO THE OWNERS EXCEPT IN SO FAR AS THE TIME REQUIRED FOR THE REPAIRS FOR WHICH CHARTERERS ARE RESPONSIBLE, EXCEEDS THE TIME NECESSARY TO CARRY OUT THE OWNERS' WORK. ALL OWNERS' EXPENSES REQUIRED FOR MAKING THE SAID DAMAGE(S) GOOD TO BE PAID FOR BY CHARTERERS AGAINST PRESENTATION OF THE RELEVANT INVOICES.

## CLAUSE 50.  P AND I CLUB

THE OWNERS GUARANTEE THAT THE VESSEL SHALL BE FULLY COVERED BY P AND I CLUB: (TO BE INFORMED BY THE OWNERS TO THE CHARTERERS BEFORE DELIVERY). CHARTERERS HAVE THE BENEFIT OF OWNERS P AND I COVER SO FAR AS THE CLUB RULES PERMIT.

CHARTERERS GUARANTEE THEY HAVE ENTERED A FULL P & I COVER THROUGHOUT THE DURATION OF THIS CHARTER PARTY.

## CLAUSE 51.  SERVICE OF AGENT

THE AGENTS APPOINTED BY THE CHARTERERS SHALL PERFORM ALL NORMAL SERVICES TO THE VESSEL AND MASTER AT NO EXTRA AGENCY FEE TO THE OWNERS EXCEPT IN CASES WHEN REPLACEMENT OF CREW OR MAJOR REPAIRS OR OTHER MAJOR OWNERS' MATTER ARE REQUIRED.

## CLAUSE 52. DEDUCTIONS

THE CHARTERERS SHALL BE ENTITLED TO DEDUCT FROM HIRE PAYMENT ANY DISBURSEMENTS FOR OWNERS' ACCOUNT, SUPPORTED BY VOUCHERS, OR ESTIMATED AMOUNTS OF DISBURSEMENTS BUT MAXIMUM UPTO US DOLLAR 750.00 PER CALLING PORT OR ANY ADVANCES TO THE MASTER INCLUDING COMMISSION THEREON, ANY PREVIOUS OVERPAYMENTS OF HIRE AND ANY OTHER EXPENSES FOR OWNERS' ACCOUNT. THE CHARTERERS SHALL BE ALSO ENTITLED TO DEDUCT FROM LAST SUFFICIENT HIRE PAYMENT/PAYMENTS ESTIMATED COSTS OF BUNKERS ON REDELIVERY

## CLAUSE 53.  SUPERFICIAL INSPECTION

DELETED.

## CLAUSE 54.  JOINT ON/OFF SURVEY

JOINT ON/ OFF HIRE SURVEY TO BE CARRIED OUT ON DELIVERY AND REDELIVERY TO ASCERTAIN THE VESSEL'S CONDITION AND QUANTIFY OF BUNKERS REMAINING ON BOARD. TIME AND COSTS FOR SUCH SURVEY TO BE EQUALLY SHARED BETWEEN THE OWNERS AND THE CHARTERERS.

## CLAUSE 55.  ELIGIBILITY FOR BUNKERING

THE OWNERS GUARANTEE THAT THE VESSEL IS ELIGIBLE FOR BUNKERS IN THE UNITED STATES OF AMERICA AND IN ANY OTHER COUNTRIES.

**CLAUSE 56. REPLENISHMENT OF BUNKERING**
REPLENISHMENT OF BUNKERS IS ARRANGED AND PAID FOR BY THE CHARTERERS. THE MASTER SHALL PAY DUE DILIGENCE FOR REPLENISHMENT OF BUNKERS SO AS NOT TO CAUSE OIL SPILLAGE WHILE BUNKERING.

**CLAUSE 57. OIL POLLUTION**

1. OWNERS WARRANT THROUGHOUT THE CURRENCY OF THIS CHARTER THEY WILL PROVIDE VESSEL WITH THE FOLLOWING CERTIFICATES:

   A) CERTIFICATES ISSUED PURSUANT TO SECTION 311(P) OF THE US FEDERAL WATER POLLUTION CONTROL ACT, AS AMENDED (TITLE 33, US CODE SECTION 1321(P)) UP TO *(INSERT THE DATE UPON WHICH SUCH CERTIFICATE(S) IS/ ARE DUE TO EXPIRE)*

   B) CERTIFICATES ISSUED PURSUANT TO SECTION 1016(A) OF THE OIL POLLUTION ACT 1990, AND SECTION 108(A) OF THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT 1980, AS AMENDED IN ACCORDANCE WITH PART 138 OF COAST GUARD REGULATIONS 33 CFR FROM *(INSERT THE EARLIEST DATE UPON WHICH THE OWNER MAY BE REQUIRED TO DELIVER THE VESSEL INTO THE CHARTER OR, IF LATER, THE DATE INSERTED IN SUB-PARAGRAPH [A] ABOVE)* SO LONG AS THESE CAN BE OBTAINED BY THE OWNERS FROM OR BY *(IDENTIFY THE APPLICABLE SCHEME OR SCHEME, FOR EXAMPLE, SIGCO).*

2. NOTWITHSTANDING ANYTHING PRINTED OR TYPED HEREIN TO THE CONTRARY:

   A. SAVE AS REQUIRED FOR COMPLIANCE WITH PARAGRAPH 1 HEREOF, OWNERS SHALL NOT BE REQUIRED TO ESTABLISH OR MAINTAIN FINANCIAL SECURITY OR RESPONSIBILITY OF OIL OR OTHER POLLUTION DAMAGE TO ENABLE THE VESSEL LAWFULLY TO ENTER, REMAIN IN OR LEAVE ANY PORT, PLACE, TERRITORIAL OR CONTIGUOUS WATERS OF ANY COUNTRY, STATE OR TERRITORY IN PERFORMANCE OF THIS CHARTER.

   B. CHARTERERS SHALL INDEMNIFY OWNERS AND HOLD THEM HARMLESS IN RESPECT OF ANY LOSS, DAMAGE, LIABILITY OR EXPENSE (INCLUDING BUT NOT LIMITED TO THE COST OF ANY DELAY INCURRED BY THE VESSEL AS A RESULT OF ANY FAILURE BY CHARTERERS PROMPTLY TO GIVE ALTERNATIVE VOYAGE ORDERS) WHATSOEVER AND HOWSOEVER ARISING WHICH OWNERS MAY SUSTAIN BY REASON OF ANY REQUIREMENT TO ESTABLISH OR MAINTAIN FINANCIAL SECURITY OR RESPONSIBILITY IN ORDER TO ENTER, REMAIN IN OR LEAVE ANY PORT, PLACE OR WATERS, OTHER THAN TO THE EXTENT PROVIDED IN PARAGRAPH 1 HEREOF.

   C. OWNERS SHALL NOT BE LIABLE FOR ANY LOSS, DAMAGE, LIABILITY OR EXPENSE WHATSOEVER AND HOWSOEVER ARISING WHICH CHARTERERS AND/ OR THE HOLDERS OF ANY BILL OF LADING ISSUED PURSUANT TO THIS CHARTER MAY SUSTAIN BY REASON OF ANY REQUIREMENT TO ESTABLISH OR MAINTAIN FINANCIAL SECURITY OR RESPONSIBILITY IN ORDER TO ENTER, REMAIN IN OR LEAVE ANY PORT OR WATERS, OTHER THAN TO THE EXTENT PROVIDED IN PARAGRAPH 1 HEREOF.

3.CHARTERERS WARRANT THAT THE TERMS OF THIS CLAUSE WILL BE EFFECTIVELY INCORPORATED INTO ALL BILLS OF LADING ISSUED THIS CHARTER PARTY.

7

**CLAUSE 58. CAPTURE, SEIZURE, ARREST**
SHOULD THE VESSEL BE CAPTURED OR SEIZED OR DETAINED OR ARRESTED BY ANY AUTHORITY OR BY ANY LEGAL PROCESS DURING THE CURRENCY OF THIS CHARTER PARTY, THE PAYMENT OF HIRE SHALL BE SUSPENDED UNTIL THE TIME OF HER RELEASE, AND ANY EXTRA EXPENSES INCURRED BY AND OR/DURING THE ABOVE CAPTURE OR SEIZURE OR DETENTION OR ARREST BUT LIMITED TO ALL THE EXPENSES RELATED TO THE RELEASE OF THE VESSEL (LEGAL/AGENCY/FEES, TRAVELLING EXPENSES ETC.) SHALL BE FOR OWNERS' ACCOUNT, UNLESS SUCH CAPTURE OR SEIZURE OR DETENTION OR ARREST IS OCCASIONED BY ANY PERSONAL ACT OR OMISSION OR DEFAULT OF THE CHARTERERS OR THEIR AGENTS OR BY REASON OF CARGO OR CALLING PORT OR TRADING UNDER THIS CHARTER.

**CLAUSE 59. SMUGGLING**
ANY DELAY, EXPENSES AND/OR FINE INCURRED ON ACCOUNT OF SMUGGLING SHALL BE FOR OWNERS' ACCOUNT IF CAUSED BY THE OFFICERS AND/OR CREW, OR SHALL BE FOR CHARTERERS' ACCOUNT IF CAUSED   BY   THE   CHARTERERS'   SUPERCARGO   AND/OR   THEIR   STAFF   OR   AGENTS.

**CLAUSE 60. HOLD CLEANING**
DELETED. N.A.

**CLAUSE 61. HOLD CONDITION ON DELIVERY AND REDELIVERY**
HOLD CONDITION ON DELIVERY OR LATEST ON ARRIVAL FIRST LOADING PORT TO BE CLEAN, SWEPT, DRY, FREE FROM SALT AND READY IN ALL RESPECTS TO RECEIVE CHARTERERS' INTENDED CARGO AND IN CASE HOLD(S) ARE NOT READY TIME AS SPECIFIED BY SHIPPERS OR INDEPENDENT SURVEYORS, THEN VESSEL TO BE PUT OFF-HIRE FROM TIME OF FAILING INSPECTION UNTIL RE-PASSING SAME.

CHARTERERS TO HAVE THE OPTION TO REDELIVER THE VESSEL WITH HOLDS AS LEFT BY STEVEDORES AGAINST PAYING OWNERS LUMPSUM US$ 5,000 IN COMPENSATION FOR THE SAME PROVIDED CHARTERERS LAST CARGO REQUIRE ONLY WASHING DOWN AND SWEEPING.

**CLAUSE 62. GANGWAY WATCHMEN.**
WATCHMEN FOR CARGO TO BE FOR CHARTERERS' ACCOUNT AND GANGWAY WATCHMEN TO BE PROVIDED BY OWNERS, BUT WHERE COMPULSORY TO EMPLOY AND PAY FOR GANGWAY WATCHMEN FROM SHORE, THE EXPENSES TO BE FOR CHARTERERS' ACCOUNT

**CLAUSE 63. PREPARATION FOR LOADING/ DISCHARGING**
OPENING AND CLOSING OF ALL HATCHES AND RIGGING OF CARGO GEAR BEFORE VESSEL'S ARRIVAL AT LOADING AND DISCHARGING BERTHS SHALL BE PERFORMED BY THE OFFICERS AND CREW FREE OF EXPENSES TO THE CHARTERERS UNLESS PROHIBITED BY THE PORT REGULATIONS

**CLAUSE 64. ADDITIONAL EQUIPMENTS, FITTING**
THE CHARTERERS, SUBJECT TO THE OWNERS' AND/OR MASTER'S PRIOR CONSENT SHALL BE AT LIBERTY TO FIT/WELD ANY ADDITIONAL EQUIPMENTS AND FITTINGS FOR LOADING, DISCHARGING AND/OR SECURING CARGO. SUCH WORK SHALL BE DONE AT THE CHARTERERS' EXPENSE AND TIME, AND THE CHARTERERS SHALL REMOVE SUCH EQUIPMENT AND FITTING AT THEIR EXPENSE AND TIME PRIOR TO REDELIVERY IF SO REQUIRED BY THE OWNERS.

**CLAUSE 65. LUMPSUM AMOUNT FOR CABLE/ENTERTAINMENT/VICTUALLING**
THE CHARTERERS TO PAY THE OWNERS US$ 1,000 MONTHLY IN LIEU OF ALL RADIOTELEGRAMS, TELEPHONE CALLS, ETC FOR THE CHARTERERS BUSINESS. AND THE CHARTERERS ALSO TO PAY THE OWNERS US$ 500 MONTHLY IN LIEU OF ALL ENTERTAINMENT FEE INCLUDING VICTUALLING INCURRED THROUGH ORDINARY COURSE OF THE VESSEL'S OPERATION FOR THE CHARTERERS' ACCOUNT. THE AMOUNT OF ABOVE SHALL BE REVIEWED, ONE YEAR AFTER DELIVERY.

**CLAUSE 66. PARAMOUNT CLAUSE**
THE CARRIAGE OF GOODS BY SEA ACT OF THE UNITED STATES, THE HAGUE RULES, OR THE HAGUE-VISBY RULES, AS APPLICABLE, OR SUCH OTHER SIMILAR INTERNATIONAL / NATIONAL LEGISLATION AS MAY MANDATORILY APPLY BY VIRTUE OF ORIGIN OR DESTINATION OF THE BILLS OF LADING, NEW BOTH-TO-BLAME COLLISION CLAUSE AND NEW JASON CLAUSE, SHALL BE DEEMED TO BE INCORPORATED HEREIN AND SHALL BE CONTAINED IN BILLS OF LADING UNLESS OTHERWISE AGREED BETWEEN THE OWNERS AND CHARTERERS, THE VESSEL SHALL NOT BE REQUIRED TO TRADE BEYOND WHAT IS WRITTEN IN THIS CLAUSE, EVEN IF THERE IS ANY DISCREPANCIES BETWEEN WAR CLAUSES OF THIS CHARTER PARTY AND BILLS OF LADING. CHARTERERS MAY FROM TIME TO TIME CONTACT OWNERS FOR ACCEPTANCE TO INSERT ALTERNATIVE CLAUSE TO THE ABOVE. SUCH ACCEPTANCE SHALL NOT BE UNREASONABLY WITHHELD.
BILLS OF LADING SHALL BE DEEMED TO CONTAIN CHAMBER OF SHIPPING WAR RISK CLAUSE 1952.

**CLAUSE 67. DIESEL OIL**
MASTER SHALL HAVE LIBERTY OF USING DIESEL OIL FOR STARTING/STOPPING OF MAIN ENGINE FOR MANEUVERING IN NARROW/SHALLOW WATER.

**CLAUSE 68. FUNNEL MARK**
OWNERS UNDERTAKE TO ALTER FUNNEL MARKINGS AT THEIR EXPENSE AND TIME PRIOR TO LEAVING THE PORT OF DELIVERY IF REQUIRED BY THE CHARTERERS.

**CLAUSE 69. BUNKER**
BUNKER ON DELIVERY 1647 METRIC TONS OF IFO AND 98 METRIC TONS MDO.
THE VESSEL SHALL BE REDELIVERED WITH ABOUT THE SAME QUANTITIES AS ACTUALLY ON BOARD ON DELIVERY.
BUNKER PRICES AT BOTH ENDS: US$ 500 FOR IFO AND US$ 1000 FOR MDO.

PROVIDED THAT IT CAN BE ACCOMPLISHED AT SCHEDULED PORTS, WITHOUT HINDRANCE TO THE OPERATION OF THE VESSEL, AND BY PRIOR ARRANGEMENT BETWEEN THE PARTIES, THE OWNERS SHALL ALLOW THE CHARTERERS TO BUNKER FOR THE ACCOUNT OF THE CHARTERERS PRIOR TO DELIVERY AND THE CHARTERERS SHALL ALLOW THE OWNERS TO BUNKER FOR THE ACCOUNT OF THE OWNERS PRIOR TO REDELIVERY SUBJECT TO CHARTERERS' APPROVAL.
1ST HIRE AND BUNKERS ON DELIVERY TO BE PAID ON DELIVERY. CHARTERERS HAVE THE OPTION TO DEDUCT VALUE OF ESTIMATED BUNKERS ON REDELIVERY FROM LAST HIRE PAYMENT OR PAYMENTS.

**BUNKER CLAUSE**
THROUGHOUT THE CURRENCY OF THIS CHARTER, CHARTERERS SHALL BE RESPONSIBLE TO COMPLY WITH IMO RESOLUTION MEPC 96 (47) ADOPTED ON 8TH MARCH 2002 (GUIDELINES FOR THE SAMPLING OF FUEL OIL FOR DETERMINATION OF COMPLIANCE WITH ANNEX V1 OF MARPOL 73/78) AND SUPPLY THE VESSEL WITH HOMOGENEOUS BLENDS OF FUEL (NOT BLENDED INLINE), THAT THE VESSEL CAN SAFELY BURN IN THE MAIN ENGINE AND AUXILIARIES, WITHIN ISO 8217:2005 (E) STANDARDS AND MARPOL 73/78 ANNEX VI REQUIREMENTS, AND ANY SUBSEQUENT AMENDMENTS THEREOF.
VESSEL TO BE SUPPLIED WITH GRADES OF BUNKERS AS PER DESCRIPTION CLAUSE.
IF SPECIFIC GRADES OF IFO OR DDO ARE NOT AVAILABLE, CHARTERERS MUST GIVE OWNERS ADEQUATE PRIOR NOTICE OF ANY SUBSTITUTE AVAILABLE GRADE OF FUEL AND ADVISE FULL SPECIFICATION FOR APPROVAL /ACCEPTANCE.
IF CHARTERERS SUPPLY OF BUNKERS ARE NOT COMPLIANT WITH ABOVE SPECIFICATION OR PROVE UNSUITABLE FOR BURNING IN THE MAIN ENGINE OR AUXILIARIES, OWNERS SHALL NOT TO BE RESPONSIBLE FOR VESSELS PERFORMANCE AND CHARTERERS INDEMNIFY OWNERS ACCORDINGLY FOR ANY CONSEQUENTIAL ENGINE DAMAGE, DEVIATION /REPAIR COSTS, LOSS, LIABILITY, EXPENSES, DELAY OR FINES. RESOLUTION OF ANY DISPUTE TO BE SETTLED BY ANALYSIS RESULTS OF SEALED BUNKER SAMPLES (BY DNVPS OR OTHER MUTUALLY AGREED ANALYST), INCLUDING, IN CASES WHERE ENGINE DAMAGE IS INVOLVED OR PERFORMANCE SERIOUSLY AFFECTED, FURTHER TESTING OF PARAMETERS BEYOND THE SCOPE OF NORMAL FUEL ANALYSIS. DNVPS FINDINGS SHALL BE CONCLUSIVE EVIDENCE OF BUNKER QUALITY /SPECIFICATION AND BINDING TO BOTH PARTIES, THE COST OF WHICH TO BE EQUALLY SHARED BETWEEN OWNERS AND CHARTERERS. (CONT.)

9

69. (CONT.)
IF CHARTERERS ARRANGE/SUPPLY BUNKERS AT A PORT/COUNTRY THAT HAS NOT RATIFIED THE MARPOL 73/78 CONVENTION, OR ANY SUBSEQUENT AMENDMENTS THEREOF, THEY WILL ENSURE THE SUPPLIER FULLY COMPLIES WITH SAMPLING PROCEDURES AND ISSUES ALL RELEVANT DOCUMENTATION REQUIRED BY MARPOL 73/78 ANNEX VI, FAILING WHICH, THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THIS NON-COMPLIANCE.
OWNERS HAVE LIBERTY TO BUNKER THE VESSEL FOR THEIR OWN ACCOUNT AT CHARTERERS' FINAL BUNKER PORT OR DISCHARGE PORT PRIOR TO REDELIVERY PROVIDING SUCH BUNKERING DOES NOT INTERFERE WITH CHARTERERS' OPERATION.
CHARTERERS HAVE A RIGHT TO DEDUCT THE VALUE OF ESTIMATED BUNKERS REMAINING ON BOARD ON REDELIVERY FROM THEIR FINAL FULL HIRE PAYMENT. THE ESTIMATED VALUE OF BUNKERS UPON REDELIVERY TO BE DEEMED AN ADVANCE AGAINST HIRE AND SHALL NOT BE SUBJECT TO COMMISSION.

**BUNKER EMISSION CONTROL CLAUSE**
NOTWITHSTANDING ANYTHING ELSE CONTAINED IN THIS CHARTER PARTY, THE CHARTERERS SHALL SUPPLY SUITABLE GRADES OF FUEL AT ALL TIMES, WITH SPECIFICATION NOT EXCEEDING MAXIMUM SULPHUR LIMITATIONS, TO ENABLE THE VESSEL TO COMPLY WITH ANY MANDATORY EMISSION RESTRICTIONS WHEN TRADING WORLDWIDE OR WITHIN CONTROLLED ZONES. THE CHARTERERS SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE OWNERS IN RESPECT OF ANY LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM THE CHARTERERS' FAILURE TO COMPLY WITH THIS CLAUSE.
FOR THE PURPOSE OF THIS CLAUSE, "EMISSION CONTROL ZONE" SHALL MEAN ZONES AS STIPULATED IN MARPOL ANNEX VI AND/OR ZONES REGULATED BY REGIONAL AND/OR NATIONAL AUTHORITIES SUCH AS, BUT NOT LIMITED TO, THE EU AND THE US ENVIRONMENTAL PROTECTION AGENCY AND ANY SUBSEQUENT AMENDMENT THEREOF.

**CLAUSE 70- CARGO CLAIM**
LIABILITY FOR CARGO CLAIM SHALL BE BORNE BY THE OWNERS AND THE CHARTERERS IN ACCORDANCE WITH THE INTER CLUB NEW YORK PRODUCE AGREEMENT. 1996 AND ANY SUBSEQUENT AMENDMENTS.

**CLAUSE 71. OPERATIONAL**
DELETED.

**CLAUSE 72. CREW FOR CRANES**
SUBJECT TO PRIOR OWNERS' CONSENT, THE CHARTERERS MAY REQUEST THE VESSEL'S DECK CREW MEMBER (MAX 6) WHO ARE TO BE EXPERIENCED WITH CRANE DRIVING OF THIS DUTY PROVIDED THAT
(A)   THE   LOCAL   AUTHORITY   AND   REGULATIONS   THEREOF   PERMIT,
(B) NO UNDERTAKING FOR CONTINUOUS WORKING HOURS IS MADE,
(C) CHARTERERS SHALL UNDERTAKE THE EXPENSES AND RESPONSIBILITY FOT THE DAMAGES TO THE VESSEL, CARGO AND ANY THIRD PARTY UNLESS SUCH DAMAGES ARE CAUSED BY GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT BY SUCH CREW,
(D) MASTER'S CONSENT IS SECURED, AND
(E) CHARTERERS TO PAY DIRECT TO THE VESSEL REASONABLE COMPENSATION FOR SUCH WORKS,
(F)   OWNERS/VESSEL   NOT   TO   BE   RESPONSIBLE   FOR   DISCHARGE   PRODUCTION.
CHARTERERS HAVE THE OPTION TO ARRANGE CRANE DRIVERS BOARD VESSEL AT DISCHARGE PORT AND/OR LOAD PORT AND THEY WILL STAY ONBOARD THE VESSEL WHICH WILL PROVIDE SUITABLE RESTING/SLEEPING AREA AS ACCESSIBLE AND AVAILABLE. FURTHER IT MAY BE REQUIRED THAT CRANE DRIVERS ARE SIGNED ONBOARD AS CREW SUPERNUMERARY, WHICH OWNERS WILL ACCEPT. CRANE DRIVERS TO SIGN LETTER OF INDEMNITY FOR ANY INJURY OR LOSS OF LIFE OF CRANE DRIVERS THAT MAY ARISE. CHARTERERS TO PAY US$ 10 (TEN UNITED STATES DOLLARS) PER CRANE DRIVER PER DAY TO OWNERS COVERING SUITABLE ACCOMMODATION ONBOARD, BREAKFAST/LUNCH/DINNER/WATER, ETC.

**CLAUSE 73 LOSS OF LIFE, PERSONAL INJURY ETC.**

CHARTERERS SHALL NOT BE LIABLE FOR LOSS OF LIFE, PERSONAL INJURY, ARREST OR SEIZURE, LOSS OR DAMAGE TO THE VESSEL OR OTHER VESSELS OR SHORE INSTALLATIONS OR BUOYS OR ANY OTHER PROPERTY CAUSED BY PERILS COVERED BY THE OWNERS' HULL AND MACHINERY, WAR RISK P AND I COVER ANY OTHER INSURANCE POLICIES UNLESS CAUSED BY CHARTERERS.

**CLAUSE 74. OWNERS BANK FOR HIRE PAYMENTS**

BENEFICIARY BANK : BANQUE CANTONALE VAUDOISE, PLACE ST FRANCOIS 14 1003 LAUSANNE
ACCT NO. E 5113.47.23
SWIFT: BCVLCH2L, IBAN : CH77 0076 7000 E511 3742 3
BENEFICIARY   : GLENCORE GRAIN BV, ROTTERDAM, HOLLAND
MENTIONING B OCEANIA /5

HIRE ONLY TO BE PAID TO A BENEFICIARY WHICH IS THE SAME AS LINE II OF CHARTER PARTY.

**CLAUSE 75. DRYDOCKING**
DRYDOCK ONLY IN CASE OF EMERGENCY.

**CLAUSE 76. ITINERARY**
AS FAR AS KNOWN THE CHARTERERS SHALL GIVE THE INFORMATION OF VESSEL'S ITINERARY, KIND OF CARGOES AND NAMES OF AGENTS AT PORT OF CALL TO THE OWNERS UPON OWNERS' REQUEST.

**CLAUSE 77. DISABILITY OF CRANES**
IN THE EVENT OF DISABLE CRANES OR INSUFFICIENT POWER TO OPERATE SAME, THE VESSEL IS TO BE CONSIDERED OFF-HIRE, CALCULATED PROPORTIONALLY TO THE NUMBER OF WORKING HATCHES FOR ALL TIME THE GEAR IS UNAVAILABLE DUE TO DISABILITY OR LOSS OF POWER. IF THE VESSEL IS DETAINED AS A RESULT OF DISABLED GEAR AND SUCH DETENTION OR LOSS OF TIME WOULD NOT HAVE OCCURRED HAD THE GEAR BEEN AVAILABLE AT ALL TIMES THEN THE PAYMENT OF HIRE TO BE ADJUSTED ACCORDINGLY AS PER CLAUSE 15.
IF DUE TO SUCH, DISABILITY OR BREAKDOWN, SHORE CRANES ARE EMPLOYED, OWNERS ARE TO BEAR ANY ADDITIONAL COST SO INVOLVED, BUT IN SUCH CASE VESSEL ONLY TO BE OFF-HIRED FOR TIME ACTUALLY LOST. IT IS HOWEVER UNDERSTOOD OWNERS AND CHARTERERS SHALL CO-OPERATE BEST POSSIBLE TO LIMIT SUCH OFF-HIRE / DETENTION.
THE CHARTERERS ONLY TO DEDUCT AGREED OFF-HIRE AMOUNT FROM THEIR HIRE PAYMENT HOWEVER THE CHARTERERS WILL BE ALLOWED TO DEDUCT ANY UNDISPUTED AMOUNT FROM THEIR LAST HIRE PAYMENTS PRIOR TO REDELIVERY.

**CLAUSE 78. SHIP TO SHIP OPERATION**

**BIMCO DOUBLE BANKING CLAUSE**

THE CHARTERERS SHALL HAVE THE RIGHT, WHERE AND WHEN IT IS CUSTOMARY AND SAFE FOR VESSELS OF SIMILAR SIZE AND TYPE TO DO SO, TO ORDER THE VESSEL TO GO, LIE OR REMAIN ALONGSIDE ANOTHER VESSEL OR VESSELS OF ANY SIZE OR DESCRIPTION WHATSOEVER OR TO ORDER SUCH VESSELS TO COME AND REMAIN ALONGSIDE AT SUCH SAFE DOCK, WHARF, ANCHORAGE OR OTHER PLACE FOR TRANSHIPMENT, LOADING OR DISCHARGING OF CARGO AND/OR BUNKERING.

THE CHARTERERS SHALL PAY FOR AND PROVIDE SUCH ASSISTANCE AND EQUIPMENT AS MAY BE REQUIRED TO ENABLE ANY OF THE OPERATORS MENTIONED IN THIS CLAUSE SAFELY TO BE COMPLETED AND SHALL GIVE THE OWNERS SUCH ADVANCE NOTICE AS THEY REASONABLY CAN OF THE DETAILS OF ANY SUCH OPERATIONS.
(CONT.)

11

78. (CONT.)
WITHOUT PREJUDICE TO THE GENERALITY OF THE CHARTERERS' RIGHTS UNDER (A) AND (B), IT IS
EXPRESSLY AGREED THAT THE MASTER SHALL HAVE THE RIGHT TO REFUSE TO ALLOW THE VESSEL TO
PERFORM AS PROVIDED IN (A) AND (B) IF IN HIS REASONABLE OPINION IT IS NOT SAFE SO TO DO.

THE OWNERS SHALL BE ENTITLED TO INSURE ANY DEDUCTIBLE UNDER VESSEL'S HULL POLICY AND THE
CHARTERERS SHALL REIMBURSE THE OWNERS ANY ADDITIONAL PREMIUM(S) REQUIRED BY THE
VESSEL'S UNDERWRITERS AND/OR COST OF INSURING ANY DEDUCTIBLE UNDER THE VESSEL'S HULL
POLICY.

THE CHARTERERS SHALL FURTHER INDEMNIFY THE OWNERS FOR ABY COSTS, DAMAGE AND LIABILITIES
RESULTING FROM SUCH OPERATIONS. THE VESSEL SHALL REMAIN ON HIRE FOR ANY TIME LOST
INCLUDING PERIODS FOR REPAIRS AS A RESULT OF SUCH OPERATIONS

**CLAUSE 79.  SLOWSTEAMING**
THE CHARTERERS TO HAVE THE PRIVILEGE OF SLOWSTEARNING THE VESSEL AT ANY SPEED
ACCEPTABLE TO THE VESSEL'S MACHINERY AND HULL (BUT NOT BELOW 45% MCR).

**CLAUSE 80.  GRAB DISCHARGE**
VESSEL IS SELF-TRIMMING BULKER AND VESSEL'S HOLDS ARE CLEAR AND UNOBSTRUCTED WITH NO
CENTRELINE BULKHEADS SHEATHINGS OR BATTENS OR EXPOSED FRAMINGS BELOW THE TOP OF
HOPPER TANK SLOPING PLATING IN ANY OF THE HOLDS. OWNERS CONFIRM VESSEL IS SUITABLE FOR
GRAB DISCHARGE AND FOR THE USE OF BULLDOZERS IN RELATION TO VESSEL'S TANK STRENGTH.
WHEN BULLDOZER USED ON TANK TOPS, THEN SAME TO HAVE RUBBER TYRES.

**CLAUSE 81.  SUPERCARGO**
THE CHARTERERS OR THEIR SUPERCARGO SHALL BE ALLOWED TO ACCESS TO ENGINE-ROOM AND
BRIDGE WITH THE CONSENT OF MASTER WHICH SHALL NOT BE UNREASONABLY WITHHELD WITHOUT
INTERFERENCE OF VESSEL'S OPERATION.

**CLAUSE 82.  RETURN OF INSURANCE PREMIUM**
THE CHARTERERS TO HAVE THE BENEFIT OF ANY RETURN INSURANCE PREMIUM RECEIVED BY THE
OWNERS FROM UNDERWRITERS (AS AND WHEN RECEIVED FROM UNDERWRITERS) BY REASON OF
VESSEL BEING IN PORT FOR A MINIMUM OF 30 DAYS, IF VESSEL IS ON HIRE.

**CLAUSE 83.  GOOD WEATHER CONDITION**
VESSEL'S SPEED / CONSUMPTION ON THE BASIS UP TO BEAUFORT SCALE FORCE 4 / DOUGLAS SEA STATE
3 (3-5 FT) / NO ADVERSE CURRENTS AND NO SWELL

**CLAUSE 84.  CARGO RELEASE CLAUSE**
CHARTERERS UNDERTAKE TO DO THEIR BEST FOR ORIGINAL BILL OF LADING TO BE AVAILABLE AT THE
DISCHARGING PORT.
SHOULD, DESPITE CHARTERERS' EFFORTS, ORIGINAL BILLS OF LADING ARE NOT ABLE TO ARRIVE AT
THE DISCHARGING PORT ON TIME, OWNERS/MASTER, AT THE CHARTERERS' REQUEST WILL ALLOW
DISCHARGE AND RELEASE OF THE CARGO AGAINST CHARTERERS' SINGLE LETTER OF INDEMNITY IN
ACCORDANCE WITH OWNERS' P+I CLUB WORDING AND SAME SIGNED BY CHARTERERS AND RECEIVERS.
CHARTERERS TO GIVE TOGETHER WITH WRITTEN INSTRUCTIONS TO THE MASTER AS TO WHOM HE
SHOULD DELIVER THE CARGO.
THE LETTER OF INDEMNITY TO BE EXPRESS COURIERED TO OWNERS IMMINENTLY UPON OWNERS'
APPROVAL OF WORDING OF FAXED COPY AND ORIGINAL BILLS OF LADING TO BE RETURNED TO
OWNERS IMMEDIATELY WHEN SAME ARE AVAILABLE.
NO ORIGINAL BILL OF LADING TO BE CARRIED ON BOARD VESSEL DURING SEA PASSAGE.
NO THROUGH OR LINER BILL OF LADING TO BE ISSUED.
ALL BILLS OF LADING ISSUED UNDER THIS CHARTER PARTY TO INCORPORATE THE PARAMOUNT CLAUSE.

**CLAUSE 85. COMMISSION**
DELETED.


**CLAUSE 86.  ISM CODE**
FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM) CODE IN
RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE
OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFINED BY THE ISM
CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE.
UPON REQUEST THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF COMPLIANCE
(DOC) AND THE SAFETY MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS.
EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY
CAUSED BY FAILURE ON THE PART OF THE OWNERS OR "THE COMPANY"  TO COMPLY WITH THE ISM
CODE  SHALL BE FOR THE OWNERS' ACCOUNT.


**CLAUSE 87. PROTECTIVE CLAUSES**
NEW JASON CLAUSE, NEW-BOTH-TO-BLAME COLLISION CLAUSE, CONWARTIME 1993, BIMCO P+I
BUNKERING CLAUSE AND CLAUSE PARAMOUNT AS ATTACHED TO FORM PART OF THIS CHARTER PARTY
AND TO BE FULLY INCORPORATED IN ALL BILLS OF LADING ISSUED HEREUNDER

**CLAUSE 88. WEATHER ROUTING**
THROUGHOUT THE CURRENCY OF THIS CHARTER, OWNERS AND CHARTERERS HAVE THE OPTION TO
EMPLOY THEIR OWN WEATHER ROUTING SERVICE TO MONITOR WEATHER CONDITIONS EXPERIENCED
DURING SEA PASSAGES AND ASSESS THE VESSEL'S PERFORMANCE. EACH PARTY TO PAY THEIR OWN
COSTS FOR SUCH SERVICES.
THE MASTER WILL COMPLY WITH CHARTERERS' WEATHER ROUTING SERVICES REPORTING PROCEDURES
AT ALL TIMES AND ENDEAVOUR TO FOLLOW CHARTERERS' (OR THEIR ROUTING SERVICES)
RECOMMENDED ROUTE. HOWEVER, THE FINAL CHOICE OF SELECTING THE SAFEST ROUTE WILL BE THE
MASTER'S DECISION, PROVIDING IT IS JUSTIFIED.
THE VESSEL'S DESCRIBED SPEED AND CONSUMPTION IS GIVEN IN GOOD FAITH AND BASED UPON:
- GOOD WEATHER CONDITIONS, WHICH ARE UNDERSTOOD TO MEAN WINDS SPEEDS OF MAXIMUM
  BEAUFORT FORCE 4 (MAXIMUM 16 KNOTS) AND/ OR DOUGLAS SEA STATE 3 (3-5 FEET), NO ADVERSE
  CURRENTS AND NO SWELL.
- FUELS SUPPLIED DURING THE CURRENCY OF THE CHARTER MEET WITH THE SPECIFICATION IN
  ACCORDANCE WITH THE VESSEL'S DESCRIPTION AND BUNKER CLAUSE.
IF REQUIRED, OWNERS/ MASTER TO SUBMIT COPIES OF THE SHIP'S LOG TO CHARTERERS FOR ALL SEA
PASSAGES.  IN THE EVENT OF DISCREPANCIES, CHARTERERS TO PRODUCE A (P.E.C.A.) REPORT TO
SUPPORT THEIR CLAIM AND THE AVERAGE/ MEAN RESULT BETWEEN CHARTERERS' (P.E.C.A.) REPORT,
OWNER'S WEATHER ROUTING SERVICES' REPORT (IF APPOINTED) AND SHIP'S LOG TO BE USED TO
AMICABLY SETTLE A CLAIM.
IN THE CASE OF AN UNRESOLVED PERFORMANCE DISPUTE, THE MATTER IS TO BE REFERRED TO THE
LMAA SMALL CLAIMS PROCEDURE FOR A FINAL DECISION.


**CLAUSE 89 .TRADING EXCLUSIONS**
WORLDWIDE TRADING WITHIN INSTITUTE WARRANTY LIMITS, EXCLUDING THE FOLLOWING:
ANY DECLARED WAR OR WARLIKE ZONE OR ANY AREAS INCLUDED IN OWNER'S UNDERWRITERS' WAR
RISK TRADING WARRANTIES AS AMENDED FROM TIME TO TIME AND ANY COUNTRIES WHERE
SANCTIONS HAVE BEEN IMPOSED OR ARE IMPOSED DURING THE CURRENCY OF THIS CHARTER PARTY.

AT THE TIME OF FIXING, CHARTERERS INTENDED LOAD PORT OF TABONEO IS NOT AN EXCLUDED PORT
AND NO ADDITIONAL PREMIUM IS PAYABLE UNDER THE TERMS OF THE OWNERS' UNDERWRITERS
INSURANCE.
(CONT.)

89. (CONT.)
YUGOSLAVIA AND STATES/AREAS FORMALLY CONSTITUTED SAME (BUT BAKAR, PLOMIN AND KOPER ARE ALLOWED), ALBANIA, TURKISH PORTS WHERE GREEK FLAG VESSEL ARE PROHIBITED, SEA OF AZOV, SYRIA, LEBANON, IRAQ, ISRAEL, LIBYA, SENEGAL, GAMBIA, GUINEA BISSAU, LIBERIA, IVORY COAST, GHANA, TOGO, BENIN, NIGERIA, CAMEROON, EQUATORIAL GUINEA, (BUT PORT KAMSAR ALLOWED), GABON, CONGO, CABINDA, ZAIRE, ANGOLA, MADAGASCAR, NECOCHEA, SOMALIA, SUDAN, ETHIOPIA, DJIBOUTI, NORTH OF BANDAR KHOMENI, MYANMAR(BURMA), KAMPUCHEA, NICARAGUA, SIERRA LEONE, SRI LANKA, NORTH KOREA, CIS PACIFIC PORTS, VIETNAM, YEMEN, ALASKA, BANGLADESH, CAMBODIA, CUBA, HAITI, GREAT LAKES, RIVER ORINOCO, AMAZON RIVER, AREAS WHERE GYPSY MOTH INFESTATION MAY OCCUR, NO DIRECT TRADE BETWEEN PRC AND ROC, MURMANSK ALLOWED ONLY WITH OWNER' S PRIOR APPROVAL AND SUBJECT ALWAYS TO PREVAILING AND EXPECTED WEATHER CONDITIONS. CHARTERERS HAVE THE OPTION TO TRADE THE VESSEL VIA CAPE HORN (OR VIA MAGELLAN STRAIT IF REQUIRED BY OWNERS/ MASTER DUE TO ADVERSE WEATHER CONDITIONS.
CHARTERERS HAVE THE OPTION TO TRADE THE VESSEL VIA CAPE HORN OR VIA MAGELLAN STRAIT IF REQUIRED BY OWNERS/MASTER DUE TO ADVERSE CONDITIONS. HOWEVER, DURING THE PERIOD 1ST JULY TO 31ST OCTOBER CHARTERERS MAY ONLY ORDER THE VESSEL TO TRANSIT THROUGH MAGELLAN STRAIT. ALL PILOTAGE COSTS TO BE FOR CHARTERERS' ACCOUNT.

### ICE CLAUSE
THE VESSEL NOT TO BE ORDERED TO, NOR BOUND TO ENTER ANY ICE-BOUND PLACE OR ANY WHOSE LIGHTS, LIGHTSHIPS, MARKS AND BUOYS ARE OR LIKELY TO BE WITHDRAWN BY REASON OF ICE ON THE VESSEL'S ARRIVAL OR WHERE THERE IS RISK THAT ORDINARILY THE VESSEL WILL NOT BE ABLE ON ACCOUNT OF ICE TO REACH THE PLACE OR TO GET OUT AFTER HAVING COMPLETED LOADING OR DISCHARGING. THE VESSEL NOT TO BE OBLIGED TO FORCE ICE, TO FOLLOW ICE-BREAKERS WHEN INWARDS BOUND. IF ON ACCOUNT OF ICE THE MASTER CONSIDERS IT DANGEROUS TO REMAIN AT THE LOADING OR DISCHARGING PLACE FOR FEAR OF THE VESSEL BEING FROZEN IN AND/ OR DAMAGED, HE HAS LIBERTY TO SAIL TO A CONVENIENT OPEN PLACE AND AWAIT THE CHARTERERS' FRESH INSTRUCTIONS. DETENTION THROUGH ANY ABOVE CAUSES TO BE FOR THE CHARTERERS' ACCOUNT.
ANY ADDITIONAL PREMIUM REQUIRED BY VESSEL'S WAR RISK UNDERWRITERS FOR PORTS CALLED DURING THE CURRENCY OF THIS CHARTER PARTY TO BE FOR CHARTERERS' ACCOUNT.
VESSEL NOT TO FORCE ICE OR FOLLOW AN ICEBREAKER.
VESSEL NOT TO SAIL TO/FROM TAIWAN DIRECTLY FROM/TO MAINLAND CHINA.
VESSEL NOT TO BREACH INSTITUTE WARRANTY LIMITS. SUBJECT TO OWNERS/CHARTERERS AGREEMENT, THE CHARTERERS HAVE THE OPTION TO BREAK IWL, AGAINST PAYING THE EXTRA INSURANCE CHARGED BY THE OWNERS INSURANCE COMPANY WHICH NOT TO EXCEED GENERAL LONDON TARIFF.
BOSPORUS /SKAW PILOTAGE TO BE FOR CHARTERERS' ACCOUNT.
TORRES STRAIT PILOTAGE TO BE FOR CHARTERERS' ACCOUNT.
VESSEL NOT TO PROCEED VIA CAPE HORN BUT PROCEED VIA MAGELLAN AND FULL PILOTAGE TO BE FOR CHARTERERS' ACCOUNT.
ANY DELAYS FOR US COASTGUARD INSPECTIONS DUE TO VESSEL CALLING USA TO BE FOR CHARTERERS' TIME AND ACCOUNT.

### CLAUSE 90. ARBITRATION
ALL DISPUTES OUT OF THIS CONTRACT WHICH CANNOT BE AMICABLY RESOLVED SHALL BE REFERRED TO ARBITRATION IN LONDON. UNLESS THE PARTIES AGREE UPON A SOLE ARBITRATOR, THE REFERENCE SHALL BE FOR A TRIBUNAL OF TWO ARBITRATORS, ONE TO BE APPOINTED BY EACH OF THE PARTIES, WHO WILL HAVE THE POWER TO APPOINT AN UMPIRE IF THEY DISAGREE. THE ARBITRATORS AND UMPIRE SHALL BE MEMBERS OF THE LONDON MARITIME ARBITRATORS ASSOCIATION OR OTHERWISE QUALIFIED BY EXPERIENCE TO DEAL WITH COMMERCIAL SHIPPING DISPUTES.
FOR DISPUTES WHERE THE TOTAL AMOUNT CLAIMED BY EITHER PARTY DOES NOT EXCEED US DOLLAR 150,000.00 EXCLUDING INTEREST THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE SMALL CLAIMS PROCEDURE OF THE LONDON MARITIME ARBITRATORS ASSOCIATION.